UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMAL J. KIFAFI, individually and on
behalf of all others similarly situated

    Plaintiff,

      v.

HILTON HOTELS RETIREMENT PLAN,
*et al.*,

    Defendants.

Civil Action No. 98-1517 (CKK)

**MEMORANDUM OPINION**
(November 21, 2011)

Plaintiff Jamal J. Kifafi brought this action on behalf of himself and similarly situated individuals for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended 29 U.S.C. §§ 1001 *et seq.*, in the Hilton Hotels Retirement Plan. Defendants are the Plan, the individual members of the Committee of the Plan, the Hilton Hotels Corporation, and individual Hilton officers or directors (collectively, "Defendants" or "Hilton"). Presently before the Court is Defendants' [259] Motion for Clarification or in the Alternative Reconsideration, seeking reconsideration of the Court's August 31, 2011 remedial Order. Upon review of the parties' submissions, the relevant legal authorities, and the record as a whole,[1] for the reasons

---

[1] While the Court's decision is based on the record as a whole, including transcripts and the Court's prior Order, its consideration of Defendant's motion has focused on the following documents and associated exhibits, in chronological order of filing: ECF No. [211] Pl.'s Br. on Equit. Relief; ECF No. [220] Defs.' Resp. Br. on Equit. Relief; ECF No. [223] Pl.'s Reply Br. on Equit. Relief; ECF No. [227] Defs.' Sur-Reply Br. on Equit. Relief; ECF No. [236] Pl. Class's Br. on Unresolved Remedial Issues; ECF No. [240] Defs.' Unresolved Remedial Issues Resp. Br.; ECF No. [242] Pl. Class's Resp. Br. on Unresolved Remedial Issues; ECF No. [259] Defs.' Mot. for Clarification or in the Alt. Recons.; ECF No. [265] Pl.'s Opp'n to Defs.' Mot.; ECF No. [268] Defs.' Reply in Supp. of Mot.; ECF No. [271] Pl.'s Sur-reply to Defs.' Mot.

stated below, Defendants' motion, is GRANTED IN PART and DENIED IN PART. Defendants' Motion is GRANTED to the extent that Defendants are not required to send union service notice and claim forms to the 478 individuals Defendants identified would not vest even with union service credit. Defendants' motion, to the extent it seeks to limit the recipients of the notice and claim forms based on the gap between hire/service date and the "first record of service" in the Plan, is DENIED AS MOOT.

## I. BACKGROUND

The history of this case is thoroughly discussed in the Court's prior opinions, notably the Court's memorandum opinion on summary judgment, *see Kifafi v. Hilton Hotels Retirement Plan*, 616 F. Supp. 2d 7 (D.D.C. 2009), as well as the Court's opinions regarding equitable remedies, *see Kifafi v. Hilton Hotels Retirement Plan*, 736 F. Supp. 2d 64 (D.D.C. 2010); *Kifafi v. Hilton Hotels Retirement Plan*, No. 98-1517, 2011 WL 3836455 (D.D.C. Aug. 31, 2011). The Court assumes familiarity with these opinions, but shall review the facts insofar as they are relevant to the issues discussed herein.

On May 15, 2009, the Court granted in part Plaintiff's motion for summary judgment. *See Kifafi v. Hilton Hotels Retirement Plan*, 616 F. Supp. 2d 7 (D.D.C. 2009). In relevant part, the Court found that Defendants had violated ERISA with respect to vesting of benefits under the Plan, that is, the time of service required for an employee to obtain a right to his or her accrued benefits. Under the Plan, employees who terminated after January 1, 1989 required five years of service to become vested; employees terminated prior to that date needed ten years of service. By its terms, the Plan required all periods of employment between the date of hire and the date of termination be taken into account, including leaves of absence and union service. *Id.*

at 29. The Court found that Defendants had violated the Plan's vesting provisions with respect to the rights of four certified subclasses (1) employees who did not receive credit for union service for purposes of vesting (the class relevant to Defendants' present motion); (2) employees to whom the 1000 hours standard was not properly applied because of inadequate record keeping; (3) employees who did not receive credit for leaves of absence; and (4) employees who did not receive credit for the year in which they became participants in the Plan for vesting purposes. *Id.* at 29-32. Accordingly, the Court ruled that the members of these vesting subclasses should be awarded the vesting credit to which they are entitled.

The Court then ordered the parties to submit briefing regarding the equitable relief appropriate to remedy the vesting violations. The Court's September 7, 2010 ruling addressed the parties' proposed remedies. *See Kifafi v. Hilton Hotels Retirement Plan*, 736 F. Supp. 2d 64 (D.D.C. 2010). The Court rejected the Plaintiff's proposal to count all periods of non-participating service as union service, and the Court likewise rejected Defendants' proposal to credit union service only where Plan records indicate union service. 616 F. Supp. 2d at 30. Instead, the Court ordered Hilton to search its corporate records for information relating to certain union service for 962 subclass members identified by Plaintiff, which must be credited for vesting purposes, and ordered the parties to develop a joint proposal for the claims procedure to be administered by Defendants to the remaining subclass members whose union service was not confirmed by a search of Defendants' records. *See* 736 F. Supp. 2d at 75-76.

The Court held a hearing on July 28 and 29, 2011 to address the outstanding remedial issues, including the number of individuals to receive claim notices, and the contents of the claim form itself. *See* 07/28/2011 Tr. at 81-105. While Plaintiff objected to the extent of

Hilton's record searches, the Court found Hilton had sufficiently searched the relevant records likely to contain information regrading class members' union service. 2011 WL 3836455 , at *5-6. Plaintiff also asked the Court to order Hilton to subpoena records from the unions to indicate whether class members had union service, but the Court concluded that obtaining the information directly from the class members was the preferred course of action. *Id.* at *6. As for the individuals to receive the notice, Plaintiffs proposed that rather than limiting the subclass of recipients of notice and claim forms to the 962 individuals previously identified, Hilton should be required to sends notices to all individuals with hire or service dates that pre-date the first year of participation in the plan, roughly 10,000 people. 07/28/11 Tr. at 81:13-82:4. Defendants objected that many of these individuals could not possibly become vested because they did not have sufficient years of service even if credited with union service. *Id.* at 93:7-11. Because Defendants failed to keep adequate records of union service, the Court held that "Defendants shall send a notice and claim form to members of the subclass whose records show a service date or a hire date that precedes the first year of participation in the Plan and who may become vested if such additional service is credited." 08/31/2011 Order at 7. Plaintiffs were ordered to identify the participants who should receive notice (later estimated at the hearing to be 9,700 individuals), and provide that information to Hilton, which would distribute the notice and claim forms. The Court entered the final remedial Order on August 31, 2011, and Defendants filed the present motion for reconsideration on September 28, 2011.

## II. LEGAL STANDARD

Section 502(a)(1)(B) of ERISA allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms

of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Pursuant to this provision, the Court may order that participants' benefits be recalculated consistent with the terms of the Plan. *See Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) ("The relief that the plaintiffs seek, recalculation of their benefits consistent with the terms of the Plan, falls comfortably within the scope of § 502(a)(1)(B).").

ERISA also has a "catchall" provision, Section 502(a)(3), which allows a participant, beneficiary, or fiduciary to "(A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3); *Varity Corp. v. Howe*, 516 U.S. 489, 507, 511 (1996). Where relief is otherwise available under Section 502(a)(1)(B), equitable relief under Section 502(a)(3) will not be "appropriate." *Varity Corp.*, 516 U.S. at 515. However, where a plan does not conform with the requirements of ERISA, relief under the catchall provision may be appropriate. The phrase "appropriate equitable relief" includes types of relief typically available in equity, but it does not include compensatory or punitive damages. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256-58 & n.8 (1993); *id.* at 258 n.8 ("'Equitable' relief must mean *something* less than *all* relief."). Courts have found that equitable relief is appropriate in ERISA cases where it places participants "in basically the same financial position in which they would be if the employer had complied with the minimum requirements necessary for the [plan] to satisfy the accrual and vesting provisions of ERISA." *Carrabba v. Randalls Food Markets, Inc.*, 145 F. Supp. 2d 763, 770-71 (N.D. Tex. 2000), *aff'd*, 252 F.3d 721 (5th Cir. 2001) (per curiam).

Federal Rule of Civil Procedure 52(b) provides that "[o]n a party's motion filed no later

than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). Rule 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir.1996) (per curiam) (internal quotation marks omitted). A motion to reconsider under Rule 59(e) "is [neither] ... an opportunity to reargue facts and theories upon which a court has already ruled nor a vehicle for presenting theories or arguments that could have been advanced earlier." *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C.2010) (internal quotation marks and citations omitted).

### III.  DISCUSSION

Defendants file the present motion asking the Court to clarify or reconsider the scope of individuals that must receive notice and claim forms as part of the union service subclass. Defendants' motion initially sought to reduce its obligation from the 9,736 individuals identified by Plaintiff as having a hire or service date that preceded the first year of participation in the Plan, to the 962 individuals identified by Plaintiff during the first and second rounds of briefing on remedial issues. Defs.' Mot. at 7. In his opposition, Plaintiff reduced the list of recipients from 9,736 to 3,129. *See* Pl.'s Opp'n, Ex. A to Decl. of Allison Pienta. Defendants' Reply took issue with sending notices to 39 individuals whom Hilton has already agreed to vest, and 478 individuals who could not become vested even if they had uncredited union service. Defs.'

6

Reply at 4-5.[2] The Court ordered a Sur-Reply from Plaintiff, to determine Plaintiff's position regarding Defendants' objections to the revised list. 11/07/11 Minute Order. Plaintiff agreed that the 39 individuals Defendants previously agreed to vest do not need to receive claim forms, but disputed Hilton's assertion that the group of 478 individuals should not receive notice and claim forms. On November 15, 2011, Defendants mailed the union service notice and claim forms to all but the 478 individuals still in dispute and 49 individuals for whom Hilton has not yet identified a valid address. Defs.' Status Report on Mailing of Union Serv. Notice and Claim Forms, ECF No. [275], at 2. Thus the only issue remaining before the Court on Defendants' motion is whether Hilton is required to send notice and claim forms to the 478 individuals Hilton identified as having insufficient years of service, such that even if the time between the date of hire or service and first year of Plan participation were credited as union service, the individual would still lack sufficient service to become vested.

    Defendants identify two purported errors in Plaintiff's methodology that led to the inclusion of the 478 individuals at issue. First, Plaintiff used 3.5 and 8.5 year "screens" to determine if the individuals might have sufficient years of service to become vested, rather than the 5 and 10 years required by the plan. Second, Plaintiff used a cut-off date of January 1, 1988 to determine whether the 5 or 10 year vesting requirement applied, as opposed to the actual Plan cut-off date of January 1, 1989. Plaintiff defended both parameters on the grounds that Hilton's Plan records are incomplete and inaccurate, and thus the criteria used account for any possible

---

[2] Defendants also raised for the first time in their Reply an alleged clerical error in the Court's August 31, 2011 Order concerning the minimum accrual rate for pre-1982 service. Plaintiff agreed that the Order mis-stated the rate. Pl.'s Sur-Reply at 9. The Court shall issue a separate order addressing the error.

errors. Pl.'s Sur-Reply at 3. The Court has previously rejected Plaintiff's arguments, and Plaintiff has shown no reason why the alleged inaccuracies in Hilton's records compel a different result here.

### A.     *General Inaccuracies*

Plaintiff heavily relies on the Court's statement during the remedies hearing that notices should be sent to a "broader" group of class members than the initial 962 because of issues with the records maintained by Hilton. Plaintiff also notes that the Court has previously recognized Hilton did not "track non-participating service." Pl.'s Sur-Reply at 3 (quoting 616 F. Supp. 2d at 29-30). Neither of these statements support Plaintiff's inclusion of these 478 individuals. The record indicates that in both instances the Court was referring to the fact that Hilton did not have internal records regarding union service, but did not concern the accuracy of the hire, service, participation, and termination dates in the Plan records. *See* 616 F. Supp. 2d at 29; 07/28/11 Tr. at 91:12-92:3. The Court has never held that the Plan records contain systematic errors or omissions regarding hire, service, termination, and plan participation dates as would be relevant to determining who should receive notice and claim forms in the union service vesting subclass. The lack of union service in the Plan records does not justify broadening the scope of recipients using the "screens" and cut-off date employed by Plaintiff. As detailed below, on several occasions the Court has rejected Plaintiff's attempt to broaden the scope of relief based on the basis of purported errors in the Plan records beyond the lack of union service records.

### B.     *Records Of Later Service*

The first specific issue identified by Plaintiff is that the "Pnearn" database contains records of service for some employees after 1988, which are not reflected in the Plan records.

According to Plaintiff, this demonstrates that some individuals with no service after 1988 may have service in 1989, and thus would be subject to the five year vesting requirement, justifying Ms. Pienta's use of the January 1, 1988 cut-off instead of the January 1, 1989 cut-off dated dictated by the plan. Plaintiff's Exhibit 4, which includes three individuals with Pnearn records after 1988, is not compelling. Though the Pnearn records for Benny Briseno indicate he was paid $20.36 in 1990, those records indicate Mr. Briseno did not record any hours of service for 1989 or 1990. Even with the Pnearn records, there would be no basis for believing Mr. Briseno worked any hours after January 1, 1989 and would eligible for vesting with five years of service. With only seven years of employment with Hilton, Mr. Briseno could not possibly vest under the ten year requirement even with credit for union service, so there is no basis for sending him a notice and claim form. The other two individuals identified in this exhibit, Leola Jefferson and Larry Stead, do not have any pay or hours after January 1, 1989. As the Court previously explained:

> The relevant question, however, is not whether the individual continued to be *employed*, but whether the employee had any additional hours of service. ERISA defines an "hour of service" as "each hour for which an employee is paid, or entitled to payment." 29 C.F.R. § 2530.200b-2(a)(1). Thus, an employee may remain on the payroll for a period of time without having any hours of service by, for example, taking unpaid leave.

736 F. Supp. 2d at 77-78. Two different sets of records–the Pnearn and Plan records–confirm these individuals do not have any hours of service after 1988, and thus "Plaintiff has not provided the Court with any reasonable basis for presuming that [the] employee worked (or was otherwise entitled to be paid) at least one hour" at any point after January 1, 1989. *Id.* Once again, "Plaintiff provides no clear explanation as to why the Court should assume that there were additional hours of service for employees between their last record of service and their date of

termination of employment." *Id.* at 77. These records do not provide any basis for finding the Plan records are inaccurate or incomplete so as to justify sending notice and claim forms to individuals who lack sufficient years of service to vest as proposed by Plaintiff.

        C.        *Early Closure Of Plan Records*

Plaintiff also argues that it appears the Plan records for certain employees were artificially terminated in 1988 to avoid the January 1, 1989 cut-off and maintain the ten year vesting requirement. Plaintiff made this same argument in the context of the hours of service class during the initial remedies briefing. *See* 736 F. Supp. 2d at 77 ("Plaintiff would also seek an audit of termination dates of "12/31" to determine whether they are actual termination dates or merely placeholders in the records."). This argument is no more compelling in this context. First, if Plaintiff questioned the reliability of the termination dates, it was Plaintiff's obligation to request other records to verify termination during discovery. With no basis on which to believe these termination dates are inaccurate, the Court is not willing to shift the burden to Defendants. This is particularly true given that Plaintiff's own evidence indicates the "12/31/1988" termination dates are accurate. The Pnearn records supplied by Plaintiff in Exhibit 5 do not show any hours of service after 1988 for any of the five employees referenced by Plaintiff. Shirley Rollins and Marcelle Jacquelyn received payments of $264 and $152 respectively in 1989, but the Pnearn records indicate that none of these individuals had hours after 1988. Using Plaintiff's additional evidence, all five of these individuals would be subject to the ten year vesting requirement, and none would vest even with credit for union service. *See* Pl.'s Ex. 5 at 2, 5, 8, 11, 14 (showing none of the individuals have records of service prior to 1982, and thus could not have recorded ten years of service prior to their termination in 1988). There is

10

insufficient evidence to show the termination dates are inaccurate or designed to avoid the January 1, 1989 cut-off date, therefore, there is no reason to burden Hilton with sending claim notices to those individuals who could not possibly vest under the ten year standard.

### D. *Status Codes Other Than Termination*

Plaintiff further argues that Defendants unfairly seek to exclude sending notice and claim forms to individuals whose Plan records do not use the code "T" for termination. Plaintiff's contention on this basis is rather disingenuous. Unlike the previous groups, Plaintiff does not provide any Pnearn or other records indicating service after 1988 that might justify sending these individuals claim forms. Moreover, Richard Bozzo could not possibly become vested even with union service credit because the Plan records indicate he died in March of 1988. Pl.'s Ex. 6 at 1 (listing date of termination and date of death for Mr. Bozzo as March 12, 1988). The two other individuals identified by Plaintiff, Dorothie Buckley and Frederick Miller, were terminated in March and April 1988 respectively. *Id.* at 2-3. Regardless of the code used in the "Note" section of the Plan records, the records clearly indicate these individuals were terminated, or died, prior to 1989, and do not support Plaintiff's allegation that the Plan records are inaccurate or incomplete.

### E. *Missing Termination Date*

Plaintiff argues that some individuals Hilton seeks to exclude lack termination dates in the Plan records, and thus could have sufficient hours to vest. Plaintiff's Exhibit 7 shows otherwise. Each of the individuals identified by Plaintiff have termination dates listed on the Plan records provided to the Court. *See* Pl.'s Ex. 7 at 1 (07/26/1986 termination for Belk William); *id.* At 2 (07/26/1986 termination for Philip McIntyre, Jr); *id.* At 3 (12/31/1985

11

termination for G. J. Roberts).  Though the relationship between the "terminated" and "Term Dt" fields in the Plan records is not entirely clear, Plaintiffs have not provided any other evidence to indicate these individuals might have sufficient service to vest even with union service.  Given that Plaintiff did not even attach the Pnearn records for these three individuals, the Court has no basis on which to conclude that records of service exist elsewhere that might contradict the termination date included in the Plan records and reasonably relied on by Hilton.

      *F.*      *Earliest Date of Hire*

Plaintiff attempts to justify the use of 3.5 and 8.5 year screens for the vesting requirements on the basis that the Plan records do not always show the earliest date of hire.  The Court previously rejected this argument in the initial remedial Order: "Plaintiff speculates that 'the corporate records of hire dates are, in fact, likely to show additional service.'  If that is the case, it was Plaintiff's obligation to uncover that evidence during discovery and bring it to the Court's attention."  736 F. Supp. 2d at 80 (citing Pl.'s Reply Brief on Equitable Relief, ECF No. 223, at 25).  Plaintiff relies on the same evidence in his Sur-Reply as used in his Reply Brief on Equitable Relief, and it is no more persuasive in this context.  Plaintiff goes even further this time in not seeking discovery as to the earlier hire dates, but attempting to shift the burden to Hilton to not only send notice and claim forms, but also investigate hire dates in other records if a claim is submitted by one of these individuals, when it was Plaintiff's burden to request the relevant record during discovery.  The Court is unwilling to give Plaintiffs a third bite at the apple on this issue.

      *G.*      *Original Subclass Members*

Plaintiff's final objection is to the footnote in Defendants' Reply which indicates 65 of

the 478 individuals at issue in Defendants' motion were included in Plaintiff's initial list of 962 individuals that should receive claim forms. Plaintiff argues that since Defendants' counsel did not object to the 962 at the remedies hearing, they should not be able to exclude these 65 individuals from receiving notice and claim forms. The Court disagrees. For the first time at the remedies hearing—and at no point during the briefing on remedies—Plaintiff argued that roughly 9,700 individuals in the union service class should receive notice and claim forms. At no point has Plaintiff explained the connection between the 962 individuals initially identified, the list of 9,700, or the final culled list of 3,129. Plaintiff's definition of the subclass that should receive notice claim forms has been a moving target, and the Court is not willing to hold statements of Defendants' counsel in reference to a now defunct list against Defendants in determining the propriety of sending notices to 478 individuals when they could not possibly vest even if credited with union service.

Furthermore, it appears Defendants would have objected to sending claim forms to these 65 individuals even if Plaintiff had continued to propose the list of 962 individuals. Defendants proposed sending the notice and claim forms to only 126 individuals, and not 962, but preferred 962 to the 10,000 or more individuals Plaintiff proposed at the remedies hearing. *See* 07/28/11 Tr. at 86:12-20. Defendants' Counsel was under the impression that the 962 individuals would be "put over the top for vesting," which would not necessarily be true for most of the group of 10,000 recipients. *Id.* at 93:2-11. Defendants have thus been consistent in their objection to providing notice to individuals who could not possibly vest even with credit for union service, as is true for the 65 individuals that were included in Plaintiff's initial proposed group of recipients. Absent any other reason why these 65 individuals should receive notice and claim forms, the

Court finds that these individuals were properly excluded from the universe of recipients as they could not possibly vest under the proper five and ten year vesting requirements.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that Defendants are not required to send notice and claim forms to the 478 individuals that could not possibly become vested even if credited with union service.  Furthermore, the Court finds Defendants have not waived their objection on this basis as to the 65 individuals included in Plaintiff's initial list of 962 claim form recipients.  Accordingly, Defendants' Motion for Clarification or in the Alternative Reconsideration is GRANTED IN PART and DENIED IN PART.  Defendants' motion is GRANTED to the extent that Defendants are not required to send union service notice and claim forms to the 478 individuals Defendants identified would not vest even with union service credit.  Defendants' motion, to the extent it seeks to limit the recipients of notice and claim forms based on the gap between the date of hire/service and first year of participation in the plan is DENIED AS MOOT.

Date:   November 21, 2011

                                             /s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge