UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------x
JAMAL J. KIFAFI, individually and on behalf of all )
others similarly situated, )
                                        ) CONFIDENTIAL –
               Plaintiff,) FILED UNDER SEAL
         v.                  )
                                          ) Case No.: 1:98CV01517 (CKK)
HILTON HOTELS RETIREMENT PLAN, )
HILTON HOTELS CORPORATION, JAMES M. ) Hon. Colleen Kollar-Kotelly
ANDERSON, MATTHEW J. HART, BARRON )
HILTON, DIETER HUCKESTEIN, and SAM D. )
YOUNG, JR., )
                                          )
               Defendants.)
                                          )
------------------------------------------------------------x

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR A STAY PENDING APPEAL AND
REQUEST FOR EXPEDITED TREATMENT**

Thomas C. Rice (*admitted pro hac vice*)
Jonathan K. Youngwood (*admitted pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

Andrew M. Lacy (D.C. Bar #496644)
SIMPSON THACHER & BARTLETT LLP
1155 F St., N.W.
Washington, D.C. 20004
(202) 636-5500
(202) 636-5502

*Attorneys for Defendants Hilton Hotels Retirement Plan, Hilton Hotels Corporation, James
M. Anderson, Matthew J. Hart, Barron Hilton, Dieter Huckestein, and Sam D. Young, Jr.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................3

ARGUMENT.............................................................................................................5

    A.    The Court Should Grant a Stay Pending Appeal Under Fed. R. Civ. P. 62(c) Without the Posting of a Bond ...........................................................................6

          1.    Defendants Have a Substantial Likelihood of Success on Appeal.............7

          2.    Absent the Requested Stay, Defendants May Be Irreparably Injured.......11

          3.    The Requested Stay Would Not Impose Irreparable Harm On Plaintiffs .14

          4.    The Public Interest Favors Imposition of the Stay Requested by Defendants .........................................................................................15

          5.    The Stay Should Not Be Conditioned on the Posting of a Bond .............16

    B.    Alternatively, the Court Should Issue a Stay Pursuant to Fed. R. Civ. P. 62(d)...18

CONCLUSION.........................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Air Line Pilots Ass'n v. E. Air Lines, Inc.*, Nos. 88-7201, 88-7204, 1988 WL 148641 (D.C. Cir. Sept. 2, 1988) ..................................................................................18

*Am. Manufs. Ins. Co. v. Am. Broad.-Paramount Theatres*, 87 S. Ct. 1 (1966) ...........................19

*Amara v. Cigna Corp.*, 559 F. Supp. 2d 192 (D. Conn. 2008), *rev'd on other grounds*, 131 S. Ct. 1866 (2011) .................................................................................................7

*Athridge v. Iglesias*, 464 F. Supp. 2d 19 (D.D.C. 2006) ...........................................19

*Athridge v. Rivas*, 236 F.R.D. 6 (D.D.C. 2006) ....................................................19

*Bray v. Fort Dearborn Life Ins. Co.*, Civil Action No. 3:06-CV-0560-B ECF, 2008 WL 1820594 (N.D. Tex. Apr. 23, 2008) ...................................................................16

*Clarke v. Office of Fed. Housing Enter. Oversight*, 355 F. Supp. 2d 56 (D.D.C. 2004) .............12

*Combustion Sys. Servs., Inc. v. Schuykill Energy Resources*, 153 F.R.D. 73 (E.D. Pa. 1994) .....14

*Continental Cas. Co. v. First Fin'l Emp. Leasing*, 2010 WL 5421337 (M.D. Fl. Dec. 27, 2010)20

*Cross v. Fleet Reserve Ass'n Pension Plan*, Civil No. WDQ-05-0001, 2007 WL 7143977 (D. Md. Feb. 27, 2007) ...........................................................................12, 15, 19, 20

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972 (D.C. Cir. 1985) ...............................6

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995) ............................................8

*Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130 (2d Cir. 2001) ....................................10

*Durand v. Hanover Ins. Grp.*, Civil Action No. 3:07CV-130-JDM, 2011 WL 1302227 (W.D Ky. Mar. 31, 2011) ....................................................................................10

*Fed. Election Comm'n v. NRA Political Victory Fund*, Civ. A. No. 90-3090, 1992 WL 19111 (D.D.C. Jan. 17, 1992) .....................................................................14, 20

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755 (D.C. Cir. 1980)......... 17, 19, 20

*Feinerman v. Bernardi*, 558 F. Supp. 2d 36 (D.D.C. 2008) ...........................................12

*Frommert v. Conkright*, 639 F. Supp. 2d 305 (W.D.N.Y. 2009) ......................................19, 20

*Gesualdi v. Laws Constr. Corp.*, 759 F. Supp. 2d 432 (S.D.N.Y. 2011) ....................................19

*Hirt v. Equitable Ret. Plan for Emps., Managers, and Agents*, 285 Fed. Appx. 802 (2d Cir. July 9, 2008) ..........................................................................................................................10

*In re Citigroup Pension Plan ERISA Litig.*, 470 F. Supp. 2d 323 (S.D.N.Y. 2006).....................8

*Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. E. Air Lines, Inc.*, 847 F.2d 1014 (2d Cir. 1998) ..........................................................................................................................16

*Kifafi v. Hilton Hotels Ret. Plan*, 736 F. Supp. 2d 64 (D.D.C. 2010).......................................3, 9

*Kifafi v. Hilton Hotels Ret. Plan.*, 189 F.R.D. 174 (D.D.C. 1999) ................................................3

*Kifafi v. Hilton Hotels Ret. Plan.*, 228 F.R.D. 382 (D.D.C. 2005) ................................................3

*Kifafi v. Hilton Hotels Ret. Plan.*, 616 F. Supp. 2d 7 (D.D.C. 2009)............................. 3, 8, 10, 11

*Knutson v. AG Processing, Inc.*, 302 F. Supp. 2d 1023 (N.D. Iowa 2004)..................................12

*LaRouche v. Kezer*, 20 F.3d 68 (2d Cir. 1994)..............................................................................7

*Laurenzano v. Blue Cross & Blue Shield, Inc. Ret. Income Trust*, 134 F. Supp. 2d 189 (D. Mass. 2001) ......................................................................................................................................10

*Lonecke v. Citigroup Pension Plan*, 584 F.3d 457 (2d Cir. 2009) ................................................8

*McCammon v. United States*, 584 F. Supp. 2d 193 (D.D.C. 2008) ..........................................6, 18

*Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516 (3d Cir. 2007) ..................................................11

*Mohammed v. Reno*, 309 F. 3d 95 (2d Cir. 2002)..........................................................................6

*Perles v. Kagy*, No. Civ. A. 01-0105(AK), 2005 WL 3262905 (D.D.C. Aug. 29, 2005).......19, 20

*Pikas v. The Williams Cos.*, No. 08-CV101-GKF-PJC, 2011 WL 4606705 (N.D. Okla. Sept. 30, 2011)........................................................................................................................................11

*Real View v. 20-20 Techs., Inc.*, 2011 WL 3568022 (D. Mass. Aug. 12, 2011) ........................20

*Sampson v. Murray*, 415 U.S. 61 (1974)......................................................................................14

*Simon Prop. Group, Inc. v. Taubman Ctrs., Inc.*, 262 F. Supp. 2d 794 (E.D. Mich. 2003)..........17

*Smith v. Contini*, 205 F.3d 597 (3d Cir. 2000) ..............................................................................8

*Thapa v. Gonzales*, 460 F.3d 323 (2d Cir. 2006)..........................................................................7

*The Cayuga Indian Nation of New York v. Pataki*, 188 F. Supp. 2d 223 (N.D.N.Y. 2002) .........14

*Thiry v. Carlson*, 891 F. Supp. 563 (D. Kan. 1995)..................................................................18

*Thomas v. City of Evanston*, 636 F. Supp. 587 (N.D. Ill. 1986)................................................14

*Thompson v. Ret. Plan for Emps. of S.C. Johnson & Son, Inc.*, 651 F.3d 600 (7th Cir. 2011).....11

*United States. v. Philip Morris USA, Inc.*, 449 F. Supp. 988 (D.D.C. 2006) ................................6

*Winnett v. Caterpillar, Inc.*, 609 F.3d 404 (6th Cir. 2010).........................................................10

## Other Authorities

29 U.S.C. § 1054(g) ....................................................................................................................11

Fed. R. Civ. P. 62(c).............................................................................................................passim

Fed. R. Civ. P. 62(d) ............................................................................................................passim

Treas. Reg. § 1.411(b)-1(a) ...........................................................................................................8

Treasury Regulations §§ 1.417(a)(3)-1(c) and (d)......................................................................13

Defendants Hilton Hotels Retirement Plan (the "Plan"), Hilton Worldwide, Inc. (formerly Hilton Hotels Corporation), James M. Anderson, Matthew J. Hart, Barron Hilton, Dieter Huckestein, and Sam D. Young, Jr. (collectively, "Defendants" or "Hilton"), by their attorneys Simpson Thacher & Bartlett LLP, respectfully submit this memorandum of law and the Declaration of Andrew M. Lacy, dated November 28, 2011 ("Lacy Decl.") in support of their motion for a stay of its August 31, 2011 order (the "Order") pending Defendants' appeal to the Circuit Court of Appeals for the District of Columbia (the "D.C. Circuit").[1] Because the Order requires Defendants to take certain actions by January 1, 2012, we respectfully request that the Court set an expedited schedule for briefing of this motion.

## PRELIMINARY STATEMENT

Defendants' appeal of this Court's August 31, 2011 Order is currently pending before the D.C. Circuit. The appeal will focus on the Court's rulings regarding backloading; Defendants are not appealing the Court's vesting rulings. The Order requires Defendants to amend the Plan and to provide participants and beneficiaries greater benefits and to award back payments and increased benefits to class members "as soon as administratively feasible[.]" Order at 7, 9. Defendants intend to implement the Court's rulings with respect to vesting determinations, adding some approximately 711 individuals to the list of plan participants. The Court has approved a modified version of the Plan amendment that Defendants drafted to effect the backloading remedy, and Defendants have re-calculated benefits for all participants (including those who are newly-vested by virtue of the Court's rulings). However, Hilton respectfully requests a stay of those portions of the Court's Order that would otherwise require

---

[1]     In its November 23, 2011 memorandum opinion, the Court stated that in order to achieve a stay of the Order, Defendants would need to file a formal motion for stay. Nov. 23, 2011 Slip Op. at 5-6.

Hilton to adopt the Court's backloading remedy or to make new payments (back payments or prospective benefits payments) to the new and previously vested participants pending the determination of Hilton's appeal.[2]

A stay is needed to prevent substantial and irreparable harm to Hilton.  First, if the required amendment is adopted, it likely could not be undone without violating ERISA's anti-cut back rule.  Second, once the additional benefits arising from the required amendment are dispensed to Plan participants or beneficiaries, they will be impossible or nearly impossible to recover without great expense and hardship.  Third, because Plaintiff has indicated he plans to seek a common fund fee award that may reduce the amounts payable to the Plan participants, it is not even possible at this time to calculate the amounts due to the class, including to the newly-vested participants, in order to make any required payments or to notify them of the amount of the retirement benefit in which they have become vested.  Finally, prior to the Court's decision on a common fund award, Hilton cannot fulfill its obligation to provide estimates of relative values of payment options available to newly-vested participants who will choose the form in which to receive their benefits.  Accordingly, the limited stay sought by this motion is needed to protect the interests of both Defendants and the Plaintiff Class pending appeal.

There is clear authority for the stay.  In particular, a discretionary stay may be granted under Fed. R. Civ. P. 62(c).  Alternatively, Defendants seek a stay as a matter of right pursuant to Fed. R. Civ. P. 62(d).  In addition, given Hilton's size, financial security, and substantial presence in the District of Columbia and given the fact that payments cannot be made

---

[2]     Hilton will, of course, continue to make scheduled payments to previously-vested participants under the existing terms of the Plan while the appeal is pending.

at this time because of the uncertainty created by the anticipated request for a common fund fee award, the Court should issue a stay without requiring Hilton to post a bond.[3]

Because the Plan Amendment is due to become effective January 1, 2012, Defendants request that the Court set an expedited briefing schedule for this motion. Defendants have filed this motion the first Court day following the Court's November 23, 2011 ruling in which the Court rejected the provision in Defendants' proposed Amendment that would have delayed the effective date of the Amendment until after resolution of the pending appeal. In order to give the Court adequate time to consider the motion, Defendants respectfully request that the Court set a response date for this motion of December 5, 2012 and a reply date of December 8, 2012.

## BACKGROUND

On June 17, 1998, Plaintiff filed this action alleging violations of ERISA in the Plan. On May 11, 1999, the Court granted-in-part and denied-in-part Plaintiff's Motion for Class Certification. *See Kifafi v. Hilton Hotels Ret. Plan.*, 189 F.R.D. 174 (D.D.C. 1999). The Court granted the motion as to a benefit accrual class, *id.* at 177-78, but denied the motion as to a "service-counting" class, which consisted of five subclasses. *Id.* at 179-80. Plaintiff subsequently renewed his motion to certify a vesting claims class, and on March 30, 2005 the Court certified four sub-classes in connection with the alleged vesting violations. *Kifafi v. Hilton Hotels Ret. Plan.*, 228 F.R.D. 382, 384 (D.D.C. 2005).

On May 15, 2009, the Court granted-in-part Plaintiff's motion for summary judgment, finding that Defendants had violated ERISA's anti-backloading provision and the

---

[3]     In the alternative, and as discussed in greater detail below, should the Court require a bond, it should be no more than fifty percent of Hilton's anticipated first year funding obligation to the Plan due to the Order, which is estimated to be $37.9 million.

3

terms of the Plan's vesting provisions. *See Kifafi v. Hilton Hotels Ret. Plan.*, 616 F. Supp. 2d 7, 28-29 (D.D.C. 2009). On September 7, 2010, the Court issued a memorandum opinion and order on remedies. With regard to the benefit accrual class, the Court endorsed Defendants' proposed remedy and ordered recalculation of benefits based on that formula. *Kifafi v. Hilton Hotels Ret. Plan*, 736 F. Supp. 2d 64, 71-73 (D.D.C. 2010). With regard to the vesting subclasses, the Court rejected a number of Plaintiff's proposed remedies, but disagreed with Defendants that no credit could be awarded for union service unless an employee's record explicitly showed eligible union service. *Id.* 75, 78-80, 82. The Court also left open a number of vesting issues, which were briefed by the parties and argued at a hearing.

On August 31, 2011, the Court issued a "final, appealable Order" which required Defendants to, *inter alia*, "amend the Plan to provide benefits" and "as soon as administratively feasible, and by no later than January 1, 2012 . . . award back payments and commence increased benefits for all class members." Order at 7, 9, 11.

On September 30, 2011, Defendants filed a notice of appeal to the Circuit Court of Appeals for the District of Columbia. The principal issues raised by Defendants on appeal are: (a) whether the Court erred in holding, based on a statement of "intent" to comply with the 133-1/3% rule within a Plan amendment, that any backloading remedy arising from this action must comply with the 133-1/3% rule rather than one of the other anti-backloading rules set forth within ERISA; (b) whether the Court erred in holding that the 1999 amendment to the Plan did not bring the Plan into compliance with ERISA's anti-backloading rules, effectively mooting Plaintiff's backloading claim; (c) whether the Court erred in ordering a backloading remedy that requires the Plan to comply with the 133-1/3% rule prior to 1994 or, alternatively, before 1987, where the Plan amendment stating an "intent" to comply with that rule was not adopted until

4

1994 and was made expressly retroactive only to 1987; and (d) whether the Court erred in holding that Plaintiff's benefit accrual claims were not time-barred.

On November 15, 2011, Defendants filed a status report regarding the mailing of union service notice and claims forms to union service subclass members. *See* Dkt #275. Within that filing, Defendants reported that union service notice and claims forms had been sent to 2,563 individuals. *Id.* at 2. Responses are due 60 days after mailing.

On November 23, 2011, the Court issued its decision and order with respect to Defendants' proposed Plan amendment. The Court rejected many of Plaintiff's objections to the Plan amendment and endorsed certain others. *See* Nov. 23, 2011 Slip Op. at 3-14. Among the aspects of the proposed amendment rejected by the Court was a provision that would have delayed the effective date of the amendment until after resolution of the current appeal. *Id.* at 5-6. The modified Plan amendment approved by the Court does include a provision stating that, prior to the effective date of the Plan amendment, it may be updated to reflect modifications to the calculations of amendment-based benefit payments that will result from any award of compensation to Plaintiff or his counsel. *See* Nov. 23, 2011 Order at 1.

## ARGUMENT

To the extent that the Order provides for injunctive relief, the Court has the discretion to order a stay to prevent irreparable harm that would otherwise be suffered by Defendants during the pendency of their appeal. *See* Fed. R. Civ. P. 62(c) (providing that the court has discretion to stay an injunction pending appeal); Order at 7 (requiring Defendants to amend the Plan), 7 (requiring Defendants to send notice and claims form to certain recipients), 8 (requiring Defendants to provide Plaintiff's counsel with revised calculations of benefits and vesting service). To the extent that the Order provides for any other form of relief, Defendants

are entitled to a stay as of right upon the posting of an adequate supersedeas bond. *See* Fed. R. Civ. P. 62(d) ("If an appeal is taken, the appellant may obtain a stay by supersedeas bond"). In either case, for the reasons set forth below, the Court should issue a stay of the portion of its Order requiring Hilton to adopt the Court's backloading remedy and make back payments or prospective benefits payments to the new and previously-vested participants pending the determination of Hilton's appeal.

A.     **The Court Should Grant a Stay Pending Appeal Under Fed. R. Civ. P. 62(c) Without the Posting of a Bond**

The determination of a motion for discretionary stay pending appeal is based on the application of four factors: (1) the movant's likelihood of success on the merits of the appeal, (2) the likelihood of irreparable harm to the movant absent a stay; (3) the likelihood of irreparable harm to other parties if a stay is imposed; and (4) the public interest in granting a stay. *See, e.g., McCammon v. United States*, 584 F. Supp. 2d 193, 197 (D.D.C. 2008) (Kollar-Kotelly, J.) (citing *United States. v. Philip Morris USA, Inc.*, 449 F. Supp. 988, 990 (D.D.C. 2006)). "A party does not necessarily have to make a strong showing with respect to the first factor (likelihood of success on the merits) if a strong showing is made as to the second factor (likelihood of irreparable harm)." *McCammon*, 584 F. Supp. 2d at 197 (citing *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 973 (D.C. Cir. 1985)); *see also Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) ("The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the movant] will suffer absent the stay.").

As discussed in further detail below, Defendants submit that they have a substantial likelihood of success on their appeal. Further, if the Plan amendment and resultant payment of increased benefits required by the Order are not stayed, Defendants would be subject

to substantial irreparable harm.  By contrast, imposition of the requested stay would not cause any irreparable harm to the Plaintiff Class, and, in fact, might benefit the class and class counsel because it would ensure that the payments made under the amendment accurately reflect any deductions required by class counsel's anticipated request for fees.  Accordingly, the Court should exercise its discretion to stay the Order pending appeal to the extent that the Order (1) requires the amendment to become effective January 1, 2012, and (2) requires Hilton to distribute increased benefits to the new and previously-vested participants in the Plan.  *See, e.g.*, *Thapa v. Gonzales*, 460 F.3d 323, 335 (2d Cir. 2006) (a stay is proper where the movant can "demonstrate[ ] some possibility of success and the balance of hardships tips decidedly in his favor"); *Amara v. Cigna Corp.*, 559 F. Supp. 2d 192, 195 (D. Conn. 2008) (*sua sponte* staying its judgment pending appeal where the "stakes [were] far too high—for both [the employer] and its employees—to implement the Court's judgment in the face of such substantial uncertainty"), *rev'd on other grounds*, *Cigna Corp. v. Amara*, 131 S. Ct. 1866 (2011).

        1.    <u>Defendants Have a Substantial Likelihood of Success on Appeal</u>

To obtain a stay of the district court's decision pending appeal "the movant need not always show a probability of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) (citation and internal quotation marks omitted).  Here, there are four important questions of law that the appellate court will review *de novo*, and on which Defendants have individually and collectively a reasonable likelihood of success.

First, the Court's determination that the backloading remedy must comply with the 133-1/3% rule was not based on any direct precedent, and, Defendants respectfully submit, is in tension with persuasive legal authority.  At summary judgment, Defendants argued that the

1999 Plan amendment cured any alleged violations of the anti-backloading provisions through compliance with the fractional rule, thereby mooting Plaintiff's benefit accrual claim. The Court disagreed, holding that the 1994 amendment's stated "intent" to comply with the 133-1/3% rule[4] created an obligation for Hilton to comply with that particular anti-backloading rule. This ruling was based on *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995) and *Smith v. Contini*, 205 F.3d 597 (3d Cir. 2000). However, both of these cases involve statements of intent with respect to amendment procedures rather than backloading compliance. Defendants submit that they are thus distinguishable. Indeed, other authority supports the proposition that a plan may be tested for backloading compliance under more than one anti-backloading rule. *See*; Treas. Reg. § 1.411(b)-1(a) (2011) (stating that "[a] defined benefit plan may provide that accrued benefits for participants are determined under more than one plan formula" so long as the plan is "not so structured as to evade the accrued benefit requirements"); *Lonecke v. Citigroup Pension Plan*, 584 F.3d 457, 469 (2d Cir. 2009) (discussing Revenue Ruling 2008-7, which applied the 133-1/3% test and the fractional rule to determine whether plan was improperly backloaded)[5]. Thus, Defendants respectfully submit there is a reasonable likelihood that the D.C. Circuit will determine that Defendants were entitled to craft a backloading remedy that complies with an anti-backloading rule other than the 133-1/3% rule.

---

[4]   Article 5.4 of the Plan amendment enacted December 29, 1994 provided: "The method of computing a Participant's accrued benefit under the provisions of Article IV is intended to satisfy the requirements of the 133-1/3 rule provided in Section 411(b)(1)(B) of the Code." *See* Hilton Hotels Retirement Plan (As Amended and Restated Effective January 1, 1987) (attached as Exhibit B to Youngwood Decl.) at 67.

[5]   The Second Circuit's *Lonecke* decision reversed the Southern District of New York's decision in *In re Citigroup Pension Plan ERISA Litig.*, 470 F. Supp. 2d 323 (S.D.N.Y. 2006), upon which this Court placed heavy emphasis within the portion of its summary judgment decision that discussed the issues raised by Defendants on appeal. *Kifafi*, 616 F. Supp. 2d at 25-26.

Second, since the Court's rejection of Defendants' argument that the 1999 Plan amendment mooted Plaintiff's benefit accrual claims hinged upon what Defendants submit was an erroneous holding regarding the effect of Hilton's statement of intent to comply with the 133 1/3% rule, the D.C. Circuit is also reasonably likely to reverse the Court's ruling as to the effect of the 1999 Plan amendment. The IRS found in its 2002 Technical Advice Memorandum that the 1999 amendment's post-amendment formula complies with the fractional rule. *See* IRS Technical Advice Memorandum regarding 1999 Plan amendment (attached as Exhibit A to the Youngwood Decl.) at 8, 11. As such, by virtue of that amendment, Hilton provided Plan participants with a Plan—and a benefit accrual formula—that complied with the fractional rule and was not backloaded.

Third, even assuming that the 1994 amendment's stated "intent" to comply with the 133-1/3% rule required the Plan to in fact do so (rather than complying with another test), the Plan's obligation to do so is temporally limited. Prior to the 1994 amendment, there was no stated intent for the Plan to comply with any particular anti-backloading rule. Indeed, the Court acknowledged that "Plan participants could not have relied on the Plan's purported compliance with the 133 1/3% rule until the 1994 amendment was signed." *Kifafi v. Hilton Hotels Ret. Plan*, 736 F. Supp. 2d at 73. Moreover, the provision within the 1994 amendment that articulated the Plan's "intent" to comply with the 133-1/3% rule was expressly adopted retroactive to January 1, 1987. *See* 1994 Amendment at 2 ("[T]he Plan is hereby amended and restated as set forth herein effective as of January 1, 1987 except where otherwise indicated"). Because the amendment was not adopted until 1994 and was retroactive only to January 1, 1987, the D.C. Circuit may reasonably disagree with the Court's finding that the Plan obligated itself to comply with the 133-1/3% rule before 1994 or, alternatively, before 1987.

Finally, Defendants are reasonably likely to succeed on their argument that the Plaintiff Class's benefit accrual claims are untimely in whole or in part. As the Court stated in the summary judgment decision, ERISA claims generally accrue "when 'there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries.'" *Kifafi*, 616 F. Supp. 2d at 36 (quoting *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 134 (2d Cir. 2001)). Notwithstanding this finding, the Court rejected Defendants' timeliness argument, holding that there was no evidence in the record that would have constituted the requisite "clear repudiation" of benefits necessary to start the limitations clock, and that "[i]t is also apparent that the mere receipt of benefits could not have conveyed such information." *Id.* In so ruling, the Court did not address a 1977 Summary Plan Description within the record that described the Plan's Social Security offset in sufficient detail to alert Plaintiff and all other Plan participants to the alleged backloading problem caused by that offset. *See* Pl.'s SJ Ex. 12 at KIF02042 (explaining that "[n]ormal retirement benefits are 1 1/2 % of your Final Average Salary, multiplied by your years of Service *and minus 50% of your Primary Social Security benefit at the time you retire*," and providing a hypothetical example) (emphasis added).[6] Moreover, the Court's determination that receipt of backloaded benefits did not constitute a "clear repudiation" was partially based, in

---

[6]     It is well-established that a summary plan description (an "SPD") can constitute the "clear repudiation" necessary for a claim to accrue and the limitations period to start running. *See, e.g., Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 410 (6th Cir. 2010) ("All of these notices of the various [allegedly unlawful] 1998 changes [to the Plan]—especially the notice provided by the SPD . . . provided the 'clear repudiation' necessary for the subclass's claims to accrue"); *Hirt v. Equitable Ret. Plan for Emps., Managers, and Agents*, 285 Fed. Appx. 802, at *2 (2d Cir. July 9, 2008) ("To the extent that a plan participant . . . considered himself entitled to benefits other than those disclosed in the SPD, the SPD 'unequivocally repudiated' that understanding"); *Durand v. Hanover Ins. Grp.*, Civil Action No. 3:07CV-130-JDM, 2011 WL 1302227, at *6 (W.D Ky. Mar. 31, 2011) ("The court concludes the 1997 SPD clearly repudiated the interest crediting floor claim by stating that the interest credits were 'Investment Experience'—dependent on the gains and losses in the market [and therefore calculated without a floor]").

Defendants' view, on a misreading of Defendants' leading case on the issue.[7]  Indeed,

subsequent case law demonstrates that the Plaintiff Class's benefit accrual claims accrued upon

each class member's first receipt of the backloaded benefits.  *See, e.g., Thompson v. Ret. Plan for

Emps. of S.C. Johnson & Son, Inc.*, 651 F.3d 600, 606 (7th Cir. 2011) ("We . . . agree with the

district court that when the participants received their lump-sum distributions, this served as an

unequivocal repudiation of any entitlement to benefits beyond the account balance"); *Miller v.

Fortis Benefits Ins. Co.*, 475 F.3d 516, 521 (3d Cir. 2007) (a claim will "ordinarily" accrue

"when [the beneficiary] first receives his miscalculated benefit award"); *Pikas v. The Williams

Cos.*, No. 08-CV101-GKF-PJC, 2011 WL 4606705 (N.D. Okla. Sept. 30, 2011) (plaintiffs'

claims accrued when they received lump sum payments that did not include payments that were

alleged to have been improperly withheld).

      2.    <u>Absent the Requested Stay, Defendants May Be Irreparably Injured</u>

      Absent a stay, Defendants would be subject to the risk of irreparable harm in the

form of potential tax disqualification of the Plan and/or substantial unrecoverable monetary

outlays.  The Order requires Defendants to amend the Plan so as to provide greater benefits to

Plan participants and beneficiaries.  Order at 7, 9.  If the required amendment is implemented

and Defendants subsequently prevail even in part on appeal, the amendment may not be able to

be undone—and the greater benefits could not be reduced to pre-amendment levels—without

---

[7]     The Court held that *Laurenzano v. Blue Cross & Blue Shield, Inc. Retirement Income
Trust*, 134 F. Supp. 2d 189 (D. Mass. 2001) is inapposite because there, the district court
"did *not* determine when the plaintiffs' causes of action accrued because, even
'assuming' they accrued when the plaintiffs received their benefits, the plaintiffs' claims
were untimely." *Kifafi*, 616 F. Supp. 2d at 36 n.25 (emphasis in original).  Defendants
contend that this misinterprets the decision, which held that "each class member's cause
of action accrued, at the earliest, when he received his lump sum distribution," and
clarified the "at the earliest" caveat to mean that "for those class members who sought
internal remedies, their causes of action did not accrue until they exhausted their internal
remedies." *Id.* at 210-11.

violating ERISA's anti-cutback rule. *See* 29 U.S.C. § 1054(g) ("The accrued benefit of a

participant under a plan may not be decreased by an amendment of the plan"); *Cross v. Fleet*

*Reserve Ass'n Pension Plan*, Civil No. WDQ-05-0001, 2007 WL 7143977, at *2 (D. Md. Feb.

27, 2007). As discussed in *Cross*, reduction of Plan benefits to pre-amendment levels in

violation of the anti-cutback rule could cause the Internal Revenue Service to disqualify the Plan

and cause all benefits under the Plan to lose the tax-deferred status tax qualified plan benefits

enjoy and disallow the Defendant's tax deductions for the contributions made to the Plan's trust,

and "the Plan's resulting inability to meet all its obligations to its participants and beneficiaries

could be permanent." 2007 WL 7143977, at *2.

       Moreover, if Defendants achieved a ruling even partially in their favor on appeal,

they would not as a practical matter be able to recover the increased benefits paid to participants

and beneficiaries. Put simply, any attempt to recover benefits distributed to thousands of

individuals would be exceedingly unlikely to succeed, and would require Defendants to incur

significant administrative expense. Unrecoverable monetary loss constitutes irreparable harm for

purposes of a motion for stay under Fed. R. Civ. P. 62(c). *Knutson v. AG Processing, Inc.*, 302

F. Supp. 2d 1023, 1037 (N.D. Iowa 2004) (noting in context of Rule 62(c) stay that "[g]enerally,

economic loss standing alone does not constitute irreparable harm, but the threat of

*unrecoverable* economic loss does amount to irreparable harm") (emphasis in original); *see also*

*Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) (noting in context of preliminary

injunction that "where the [party] in question cannot recover damages . . . any loss of income

suffered by [that party] is irreparable *per se*"); *Clarke v. Office of Fed. Housing Enter. Oversight*,

355 F. Supp. 2d 56, 65-66 (D.D.C. 2004) (same).

Finally, it is simply not possible for Hilton to implement the Plan amendment prior to the Court's determination as to entitlement to, and amount of, attorney's fees, incentive awards, or other such compensation to Plaintiff and his counsel.  As the Court recognized in its decision on the proposed Plan amendment, Plaintiff has indicated an intent to request attorney's fees from a common fund.  Nov. 23, 2011 Slip Op. at 4.  By virtue of Plaintiff's request, the new benefits under the amendment cannot be calculated until a final determination on the amount, if any, of attorney's fees to be granted in the form of a common fund award.

The Plan amendment appropriately contains a provision specifically addressing the possibility that the Court will award such compensation.  *See* Nov. 23, 2011 Order at 1.  That provision states, in relevant part, that,

> . . . if such awards are from the common fund, such awards will proportionally reduce the benefits otherwise payable under [the amendment] . . . . [T]he terms of this Amendment will be updated prior to its execution to reflect the appropriate calculation of such reductions.

*Id.*  By its own terms, the Court's approved amendment cannot be implemented until the issue of common fund attorney's fees and other such awards has been resolved and the benefits to be paid under the Amendment are adjusted accordingly.[8]

A further complication arising from implementation of the Plan amendment prior to the resolution of an appeal and a determination on attorney's fees is that, under the terms of the Plan, Hilton must provide newly-vested participants who wish to start their benefit with a choice of optional forms of payment (with respect to which participants must be given at least thirty days to elect the form of payment) prior to commencement of payments.  *See* 2007 Plan §

---

[8]     Pursuant to the Order, Plaintiff must apply for incentive awards and attorney's fees no later than January 6, 2012.  *See* Order at 11.  Even after the parties have briefed the issue and the Court has issued its ruling, the issue might remain unsettled since it would be subject to appeal by, *e.g.*, a member of the Plaintiff Class.

4.5(d).  In order to facilitate the participants' decision, Hilton must provide estimates of the

relative values of the different payment forms available to each participant.  *See* 2007 Plan §

4.5(c); *see also* Treasury Regulations §§ 1.417(a)(3)-1(c) and (d).  Prior to a decision on a

common fund attorney's fee award, Hilton would be unable to provide such estimates.  Thus,

absent the requested stay, Hilton would be in the untenable position of being required to

implement an amendment that simply cannot be implemented at this stage of the litigation in a

manner which complies with the terms of the Plan and the relevant Treasury Regulations.

        3.     The Requested Stay Would Not Impose Irreparable Harm On Plaintiffs

        A stay of the portion of the Order requiring implementation of the Plan

amendment and payment of increased benefits would, at most, slightly delay the payment of any

increased benefits to which Plan participants or beneficiaries might be entitled as a result of this

case.  No irreparable harm would result from such delay because Plan participants and

beneficiaries will ultimately be paid the full amount of increased benefits that they are owed, as

well as court-ordered interest on that amount.  *See* Order at 10 (applying post-judgment interest

at the statutory rate).

        This Court has held that a requested stay would not harm non-movants for the

reason that "they [would] collect interest from the date of the judgment should they prevail on

appeal."  *Fed. Election Comm'n v. NRA Political Victory Fund*, Civ. A. No. 90-3090, 1992 WL

19111, at *1 (D.D.C. Jan. 17, 1992).  Similarly, in *Cayuga Indian Nation of New York v. Pataki*,

the Northern District of New York stated that it "c[ould not] ignore the fact that there would be

no concomitant harm to the . . . plaintiffs if it grant[ed] a stay because they would be entitled to

post-judgment interest."  188 F. Supp. 2d 223, 253 (N.D.N.Y. 2002); *see also Sampson v.

Murray*, 415 U.S. 61, 90 (1974) ("[T]emporary loss of income, ultimately to be recovered, does

not usually constitute irreparable injury."); *Combustion Sys. Servs., Inc. v. Schuylkill Energy*

*Resources*, 153 F.R.D. 73, 74 (E.D. Pa. 1994) (finding that Rule 62(b) stay would not harm

defendants and noting that "Defendants will earn post judgment interest . . . until the judgment is

paid"); *Thomas v. City of Evanston*, 636 F. Supp. 587, 590 (N.D. Ill. 1986) ("The harm to

plaintiffs from a stay . . . will be reparable and is thus not substantial. They . . . would recover

the loss in a lump sum with interest should they win the appeal."). Thus, because the Plaintiff

Class' stake in the judgment is protected by post-judgment interest applied by the Court, it would

suffer no harm from a stay.

To the contrary, the Plaintiff Class—and its counsel—might benefit from the stay

sought by Defendants. Absent the stay, on January 1, 2012 Defendants will start paying benefits

that must be reduced proportionally to account for any attorney's fees and other such

compensation awards granted by the Court, but which cannot be reduced since the issue of fees

and awards will be unresolved. Once the issue of attorney's fees and other such awards is

resolved weeks or months *after* January 1, 2012, the Plaintiff Class will owe to Plaintiff and/or

Plaintiff's counsel a portion of those benefits, and Plaintiff and/or Plaintiff's counsel will be

faced with the tasking of collecting a portion of their awards directly from the Plaintiff Class.

Accordingly, Defendants respectfully submit that the most logical and efficient solution for all

parties is to stay implementation of the amendment pending appeal so that the payments

distributed under that amendment will accurately reflect any necessary fee and award-related

deductions.

4.   The Public Interest Favors Imposition of the Stay Requested by
     Defendants

The requested stay should also be granted because public policy favors the

protection of pension plan assets. In *Cross*, the defendant pension plan argued in support of its

motion for a discretionary stay that "public policy favors protecting pension plan assets." *Cross*

*v. Fleet Reserve Ass'n Pension Plan*, Civil No. WDQ-05-0001, 2007 WL 7143977, at *2 (D. Md. Feb. 27, 2007) (waiving bond requirement where "the bond premium would be an unnecessary waste of the Plan's assets"); *see also* Brief of *Cross* Defendants in Support of Stay, 2007 WL 7115094 (arguing that such protection would "not only save[] the Plan a significant expense, but permit[] continuing investment of the funds (further strengthening the Plan's ability to pay any final judgment)[.]". The *Cross* court agreed that the "public interest" favored a stay. *Cross*, 2007 WL 7143977, at *2. The same consideration applies here. If Defendants are required to amend the Plan and pay increased benefits that are subsequently deemed improper, the investment value of those benefits during the pendency of the appeal will be lost. *But see Bray v. Fort Dearborn Life Ins. Co.*, Civil Action No. 3:06-CV-0560-B ECF, 2008 WL 1820594, at *4 (N.D. Tex. Apr. 23, 2008) (holding in ERISA case that the public interest factor was neutral because "it [wa]s unlikely that the public ha[d] much of an interest in this litigation").

     5.    The Stay Should Not Be Conditioned on the Posting of a Bond

Courts have discretion to require a bond in connection with a stay under Rule 62(c) "to preserve the status quo pending [the] appeal . . . ." *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. E. Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1998). Here, no bond is necessary because Hilton is a financially strong, global leader within the hospitality industry, and because the status quo is preserved by the stay itself.

Hilton is financially secure and poses no reasonable danger of non-payment to the Plaintiff Class. Hilton estimates that its annual funding to the Plan will increase as a result of the Court's orders by approximately $75.8 million in 2012, $1.5 million in 2013 and $5.6 million in 2014. Declaration of Michael W. Duffy, dated November 28, 2011 ("Duffy Decl.") (attached to Lacy Decl. as Exhibit A) ¶ 5. ████████████████████████████████████████



Additionally, as discussed *supra* at Section A.2., absent a stay the status quo would be destroyed by Defendants' obligation to irreversibly amend the Plan and distribute unrecoverable increased benefit payments.  By contrast, any backloading remedy awarded to Plan participants and beneficiaries at the conclusion of appeal proceedings will include post-judgment interest, such that the Plaintiff Class would not be prejudiced by a stay even if Defendants' appeal were denied in full.  Unless the Plaintiff Class can identify non-speculative

9

injury that it would suffer from the imposition of a stay without a bond, no bond is necessary.

*See, e.g., Simon Prop. Group, Inc. v. Taubman Ctrs., Inc.*, 262 F. Supp. 2d 794, 799 (E.D. Mich.

2003) (holding that no bond was necessary with respect to injunction preventing disruption of

takeover bid because the plaintiff's "assertion that it may incur damages" as a result of delay

with respect to the proposed acquisition was "purely speculative."); *Thiry v. Carlson*, 891 F.

Supp. 563, 565, 567-68 (D. Kan. 1995) (holding that no bond was necessary with respect to stay

pending appeal of the dissolution of an injunction against construction project because "damages

in the form of increased [construction] costs [we]re . . . speculative.").

To the extent that the Court determines that a bond is necessary, Defendants

respectfully submit that the bond should be no greater than fifty percent of the amount by which

Hilton's funding obligations will increase during the pendency of the appeal as a result of the

Order.[10] Even assuming that the D.C. Circuit rejects each of Hilton's arguments and the Court's

Order remains completely unchanged, Hilton's increased funding obligation for 2012 as a result

of the Court's Order is estimated to be approximately $75.8 million. Duffy Decl. ¶ 5.[11] Given

Hilton's size, financial security, and substantial presence in the District of Columbia, a bond in

the amount of no more than fifty percent of the first year funding obligation due to the Order,

i.e., $37.9 million, is more than adequate to secure the judgment here.

---

[10]   The D.C. Circuit has applied a case-specific inquiry to determine the appropriate amount
of a bond pending appeal. *See Air Line Pilots Ass'n v. E. Air Lines, Inc.*, Nos. 88-7201,
88-7204, 1988 WL 148641, at *1 (D.C. Cir. Sept. 2, 1988) (allowing Rule 62(c) stay upon
posting of a $4.7 million bond, which would "cover[] one month's liability for pay
to members of appellee unions furloughed pursuant to appellant's July 22, 1988 program
of service changes.").

[11]   If appeal proceedings continue beyond 2012, Defendants could supplement the bond to
account for the incremental funding obligations that would arise in subsequent years due
to the Court's Order. Assuming that Defendants' pending appeal fails in all respects,
increased funding obligations resulting from the Order are currently estimated to be $1.5
million for 2013 and $5.6 million for 2014. Duffy Decl. ¶ 5.

**B.**   **Alternatively, the Court Should Issue a Stay Pursuant to Fed. R. Civ. P. 62(d)**

"Rule 62(d) provides that a party appealing a money judgment may obtain a stay pending appeal upon the posting of a supersedeas bond." *McCammon*, 584 F. Supp. 2d at 197 n.4 (Kollar-Kotelly, J.).  Provided that FRCP 62(d) applies and a proper supersedeas bond is posted, the appealing party is entitled to the stay as a matter of right. *See, e.g., Am. Manufs. Ins. Co. v. Am. Broad.-Paramount Theatres*, 87 S. Ct. 1, 3 (1966); *Athridge v. Rivas*, 236 F.R.D. 6, 7 (D.D.C. 2006).

To the extent that the Court determines that no stay is warranted under Rule 62(c), then the Order must be monetary rather than injunctive such that Defendants are entitled to a stay as of right. *See, e.g., Frommert v. Conkright*, 639 F. Supp. 2d 305, 309-11 (W.D.N.Y. 2009). (granting FRCP 62(d) stay with respect to order "which directed the defendants to recalculate plaintiffs' retirement benefits, consistent with the terms [of the Order] . . . and to pay each plaintiff a lump sum"); *Gesualdi v. Laws Constr. Corp.*, 759 F. Supp. 2d 432, 444, 447-49 (S.D.N.Y. 2011) (holding that FRCP 62(d) applied to a judgment that required the defendants to pay unpaid pension plan contributions (and interest thereon), attorney's fees and court costs); *Cross*, 2007 WL 7143977 at *3 (staying order requiring payment of benefits under pension plan).

Although Rule 62(d) stays generally require posting of a supersedeas bond, "[i]n unusual circumstances . . . the district court in its discretion may order partially secured or unsecured stays if they do not truly endanger the judgment creditor's interest in ultimate recovery." *Fed. Prescription*, 636 F.2d at 760-61; *see also Athridge v. Iglesias*, 464 F. Supp. 2d 19, 24 (D.D.C. 2006) ("In addition to accepting less than a full supersedeas bond to secure a judgment pending appeal, courts have discretion to approve other forms of security than a supersedeas bond"); *Perles v. Kagy*, No. Civ. A. 01-0105(AK), 2005 WL 3262905, at *2 (D.D.C.

19

Aug. 29, 2005) ("Appropriate circumstances for waiver [of the supersedeas bond] include cases in which the net worth of the judgment [debtor] far exceeds the amount of the judgment"). Because "[t]he purpose of the supersedeas bond is to secure the appellee from loss resulting from the stay of execution," *Fed. Prescription*, 636 F.2d at 760, waiver or reduction of the bond is appropriate where "in the absence of standard security, [the non-movant] will be properly secured against the risk that [the movant] will be less able to satisfy the judgment after disposition of the post-trial motions." *Continental Cas. Co. v. First Fin'l Emp. Leasing*, 2010 WL 5421337, at *1 (M.D. Fl. Dec. 27, 2010); *see also, e.g.*, *Real View v. 20-20 Techs., Inc.*, 2011 WL 3568022, at *2 (D. Mass. Aug. 12, 2011).

      D.C. Circuit precedent and case law in other courts supports waiver of the bond requirement in situations such as this, where there is little risk of default. *See, e.g., Fed. Prescription*, 636 F.2d at 760 (affirming district court's finding that no bond was required where judgment debtor's net worth significantly exceeded judgment amount and debtor was not likely to leave the district court's jurisdiction); *Perles v. Kagy*, No. Civ. A. 01-0105(AK), 2005 WL 3262905, at *2 (D.D.C. Aug. 29, 2005) ("Appropriate circumstances for waiver [of the Rule 62(d) supersedeas bond] include cases in which the net worth of the judgment [debtor] far exceeds the amount of the judgment"); *Frommert v. Conkright*, 639 F. Supp. 2d 305, 313 (W.D.N.Y. 2009) (waiving bond requirement where assets of the defendant ERISA plan far exceeded the amount of the judgment); *Fed. Election Comm'n v. NRA Political Victory Fund*, Civ. A. No. 90-3090, 1992 WL 19111, at *1 (D.D.C. Jan. 17, 1992) (waiving Rule 62(d) supersedeas bond requirement where "the defendants [were] financially solvent, and [] there [was] little risk they [would] fail to pay their penalty, with interest, should they lose their appeal").

For example, in *Cross*, the District of Maryland court waived the supersedeas bond requirement as to the defendant pension plan, noting that it was "confident that the Defendants have sufficient surplus assets to satisfy the judgment, with interest should they fail on appeal." 2007 WL 7143977, at *4. The *Cross* court also noted that given the facts of the case, "the bond premium would be an unnecessary waste of the Plan's assets." *Id.* As noted above, as of December 31, 2010, Hilton's audited financial statements reflected assets of

Finally, as of January 1, 2011, the actuarial value of the Plan's assets was approximately $289.8 million. *Id.* ¶ 4. Given Hilton's financial strength and stability and the substantial amount of Plan assets, the Court should waive the supersedeas bond requirement.

To the extent that the Court determines that a bond is necessary in connection with a Rule 62(d) stay, and as discussed in greater detail above, Hilton respectfully submits that the amount of the bond should be limited to no more than fifty percent of the $75.8 million increased funding obligation in 2012 due to the Order (*id.* at ¶ 5), which is $37.9 million. Again, this amount is justified based on Hilton's financial strength and stability, along with Hilton's substantial presence in the District of Columbia. Duffy Decl. ¶¶ 4-14. Because the available cash and assets far exceed the amount of the Order that could reasonably be expected to require payment in the near future, a supersedeas bond greater than that proposed by Defendants would be "an unnecessary waste of the Plan's assets," and should be rejected.

## CONCLUSION

In accordance with the foregoing and for the reasons stated therein, Defendants respectfully request that the Court enter an order staying (1) implementation of the Plan amendment pending resolution of Defendants' appeal to the Circuit Court of Appeals for the District of Columbia, (2) payments of new benefits to current or newly-vested Plan participants pending resolution of Defendants' appeal to the Circuit Court of Appeals for the District of Columbia, and (3) requiring no bond or, in the alternative, a bond in an amount no greater than $37.9 million.

Dated: November 28, 2011

SIMPSON THACHER & BARTLETT LLP

By: _____

Thomas C. Rice (*admitted pro hac vice*)
Jonathan K. Youngwood (*admitted pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

Andrew M. Lacy (D.C. Bar #496644)
SIMPSON THACHER & BARTLETT LLP
1155 F St., N.W.
Washington, D.C. 20004
(202) 636-5500
(202) 636-5502

*Attorneys for Defendants Hilton Hotels Retirement Plan, Hilton Hotels Corporation, James M. Anderson, Matthew J. Hart, Barron Hilton, Dieter Huckestein, and Sam D. Young, Jr.*