# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMAL J. KIFAFI, individually and on
behalf of all others similarly situated,

    Plaintiff,

      v.

HILTON HOTELS RETIREMENT PLAN,
*et al.*,

    Defendants.

Civil Action No. 98-1517 (CKK)

## MEMORANDUM OPINION
(November 18, 2013)

This action was brought by Plaintiff Jamal J. Kifafi, on behalf of himself and similarly

situated individuals, to recover for violations of the Employee Retirement Income Security Act

("ERISA") of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.*, in the Hilton Hotels Retirement Plan

(the "Plan"). Defendants are the Plan, the individual members of the Committee of the Plan, the

Hilton Hotels Corporation, and individual Hilton officers or directors (collectively, "Defendants"

or "Hilton"). On May 15, 2009, this Court granted-in-part Plaintiff's motion for summary

judgment, finding that Defendants had violated ERISA's anti-backloading provision, 29 U.S.C.

§ 1054(b)(1), and had violated the Plan's vesting provisions with respect to the rights of four

certified subclasses. *See Kifafi v. Hilton Hotels Retirement Plan*, 616 F. Supp. 2d 7 (D.D.C.

2009). Presently before the Court is the Plaintiff's [308] Motion for Attorneys' Fees and

Incentive Award. Upon consideration of the pleadings, the affidavits submitted by the parties,[1]

---

    1 Pl.'s Mot. for Atty. Fees, ECF No. [308]; Defs.' Opp'n, ECF No. [315]; Pl.'s Reply, ECF No.
[317]; Pl.'s Notice of Supp. Authority, ECF No. [337]; Def.s' Response to Pl.'s Notice of Supp.
Authority, ECF No. [342]; Pl.'s Second Notice of Supp. Authority, ECF No. [367]; Decl. of Stephen R.
Bruce, ECF No. [308-2]; Supp. Decl. of Stephen R. Bruce, ECF No. [317-1]; Decl. of Claude Poulin,

and the entire record herein, the Court GRANTS IN PART and DENIES IN PART the Plaintiff's [308] Motion for Attorneys' Fees and Incentive Award for the reasons explained below.

## I. BACKGROUND

*A. Factual and Procedural Background*

The history of the case is thoroughly laid out in the Court's prior opinions, most significantly its opinion on summary judgment, *see Kifafi v. Hilton Hotels Retirement Plan*, 616 F. Supp. 2d 7 (D.D.C. 2009), and its opinions regarding equitable remedies, *see Kifafi v. Hilton Hotels Retirement Plan*, 736 F. Supp. 2d 64 (D.D.C. 2010) (initial remedial order); *Kifafi v. Hilton Hotels Retirement Plan*, 826 F. Supp. 2d 25 (D.D.C. 2011) (final remedial order); *Kifafi v. Hilton Hotels Retirement Plan*, 825 F. Supp. 2d 298 (D.D.C. 2011) (order on amendments to remedial plan). The Court assumes familiarity with these opinions. Nevertheless, the Court shall review the facts of this case insofar as they are relevant to the issues discussed herein.

The Hilton Hotels Retirement Plan (the "Plan") is a defined benefit pension plan subject to ERISA. On June 17, 1998, Jamal Kifafi, a former employee of the Capital Hilton eligible to receive a pension, brought suit against the Plan alleging the Plan failed to properly credit years of service and violated ERISA's provision that prohibits employers from "backloading" benefits, i.e., using a benefit accrual formula that postpones the bulk of an employee's accrual to his later years of service. *See* 616 F. Supp. 2d at 15. In order to prevent backloading, ERISA requires defined benefit plans to satisfy one of three alternative minimum accrual rules, known as the "3% rule," the "133 1/3% rule," and the "fractional rule." *Id.* at 11-12; *see* 29 U.S.C. § 1054(b)(1). Initially, Hilton defended the Plan as having complied with the 133 1/3% rule. *Id.*

---

ECF No. [308-3]; Supp. Decl. of Claude Poulin, ECF No. [317-2]; Decl. of Ian H. Altman, ECF No. [315-2]; Pl.'s Cert. of FRCP 23(h)(1) Notice and Summary of Objections, ECF No. [368]; Stipulation and Agreement on Valuation of Benefits in Common Fund, ECF No. [374].

at 15. However, shortly after Kifafi moved for class certification in November 1998, Hilton amended the Plan's benefit accrual formula "for the purpose of eliminating any controversy regarding the propriety [sic] of the rate of benefit accruals under the Plan," and specifically referenced this lawsuit. *Id.* at 16. Hilton's new formula sought to comply with the fractional rule. *Id.* The 1999 amendment ("1999-1 Amendment") also changed two unrelated aspects of the Plan that lowered benefits for participants. *Id.*

Following briefing on summary judgment, on May 15, 2009, this Court held that the pre-amendment Plan failed to comply with *any* of the three minimum accrual rules and that the pre-amendment Plan was required to comply with the 133 1/3% rule. *Id.* at 24. The Court concluded that "the Plan's participants are entitled to receive the benefits they would have accrued had the Plan complied with the 133 1/3% rule." *Id.* at 25. The Court also concluded that the 1999-1 Amendment to the Plan did not moot the ERISA violation. *Id.* at 25-28. The Court's ruling applies to a certified class of current and former Hilton employees (the "benefit-accrual class").[2]

The Court also found that Defendants had violated ERISA with respect to the vesting of benefits under the Plan, i.e., the time of service required for an employee to obtain a right to his or her accrued benefits. *Id.* at 29-32. The Court found that Defendants had violated the Plan's vesting provisions with respect to four certified subclasses: (1) they failed to credit employees'

---

2 The benefit-accrual class is defined as follows:

> all former and current employees of Hilton Hotels Corporation who were employed by Hilton Hotels Corporation after January 1, 1976 and have, or may obtain, a vested right to pension benefits from the Hilton Hotels Retirement Plan, and whose Hilton Hotels' pension benefits have been, or will be, reduced as a result of the Defendants' failure to accrue retirement benefits at the annual rates that ERISA requires.

*Kifafi v. Hilton Hotels Retirement Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999).

union service for purposes of vesting;[3] (2) they failed to properly apply the 1000 hours standard because they kept inadequate records; (3) they failed to credit employees' leaves of absence; and (4) they failed to count the year in which employees became participants in the Plan for vesting purposes. *Id.* at 29. Accordingly, the Court ruled that the members of these vesting subclasses should be awarded the vesting credit to which they are entitled.

On August 31, 2011, the Court issued an Order requiring Defendants to (1) amend the Plan's benefit accrual formula by capping the Social Security offset, thereby bringing the Plan into retroactive compliance with the 133 1/3% rule, and (2) administer a claim procedure for crediting participants' years of union service for vesting purposes. 8/31/11 Order, ECF No. [258], at 5-7. Defendants appealed the Court's liability and remedial orders to the D.C. Circuit Court of Appeals and sought a stay pending appeal, which the Court granted. On December 14, 2012, the Court of Appeals affirmed the Court's liability and remedial orders. *See Kifafi v. Hilton Hotels Retirement Plan*, 701 F.3d 718 (D.C. Cir. 2012). Before the Court of Appeals, the Defendants' primary argument had been that the 1999-1 Amendment mooted Kifafi's backloading claims. The Court of Appeals, however, found the case was not mooted because Hilton could not meet its burden of showing there was no reasonable likelihood of future backloading. *Id.* at 725. In addition, the Court of Appeals affirmed the Court's remedial order, finding that Hilton's prospective compliance with ERISA's anti-backloading mandate through the 1999-1 Amendment did not "circumscribe[] [the district] court's remedial options in the face of past violations." *Id.* at 727-28.

### B. Present Motion for Attorney Fees, Expenses, and Incentive Award

---

3 Although there was evidence in the record to suggest that Hilton failed to credit other types of nonparticipating service for purposes of vesting, the Court declined to expand the scope of the subclass beyond employees' union service for the reasons stated in that opinion. *Kifafi*, 616 F. Supp. 2d at 30 n.18.

The Plaintiff now petitions the Court for attorneys' fees to be awarded as a percentage of the common fund, as well as expenses totaling $603,000 and a $50,000 class representative incentive award for Jamal Kifafi. The Defendants do not appear to oppose the Plaintiff's request that attorney fees be awarded as a percentage of the common fund, nor his request for expenses and an incentive award. *See* Def.s' Opp'n, at 1-2 & n.3. The parties do disagree, however, about what benefits should be included in the common fund for the purposes of determining attorneys' fees, the monetary value of these benefits, and the percentage of the common fund Class Counsel should receive. The Plaintiff argues that Class Counsel should be awarded 15% of the common fund, which he contends includes the benefits from the backloading remedy as well as the benefit increases resulting from Hilton's 1999-1 Amendment for a total of $152 million. The Plaintiff also argues that the common fund should include the value of accrued benefits the Defendants recently "created" for 978 Plan participants, increasing the total of the common fund to $230 million. In the event the Court were to include these benefits in the common fund, the Plaintiff decreases his request to a 10% award of the common fund.

The Defendants argue that the common fund should only include the benefits from the backloading remedy because the increased benefits from the 1999-1 Amendment were a result of the Defendants' "voluntary actions, outside the court's jurisdiction." Def.s' Opp'n at 11. Furthermore, the Defendants contend that the "new" benefits for the 978 Plan participants were already recognized—and in some cases already paid—by the Defendants under the original Plan and the recent appearance of these benefits in Hilton's database is due primarily to a database error, not to Class Counsel's litigation efforts. The Defendants also contend that Class Counsel overvalues the common fund and that the fund is worth $103.9 million, or, if the benefits from the 1999-1 Amendment, are included $139.1 million. Finally, the Defendants maintain that a

15% award for Class Counsel is unreasonably high given the large size of the common fund.

On June 13, 2013, the Court ordered the parties to notify each member of the plaintiff class of the increase in his or her retirement benefit and Class Counsel's request for attorneys' fees, expenses, and a class representative incentive award. *See* 06/13/13 Order, ECF No. [358]. The Notice specifically included the amount of the class member's original retirement benefit, the increase in the benefit due to the present litigation, and the class member's new total retirement benefit. Importantly, the increase in the benefit included any increase due to the class members from the 1999-1 Amendment, if the 1999-1 Amendment benefit had not yet been put in pay status or paid out to the class member. *See id.* The Notice also indicated that Class Counsel requested an attorneys' fee based on 15% of the increased benefits and stated that the attorneys' fee would result in a 15% reduction in each class member's *benefit increase*. *See id.* Finally, the Notice provided instructions for class members to object to the requested attorneys' fee award.

The Court shall discuss in turn the proper contents of the common fund, the valuation of the common fund, and the appropriate percentage award due Class Counsel. In addition, although the Defendants do not oppose Plaintiff Counsel's request for expenses and an incentive award, the Court shall independently evaluate the reasonableness of these requests.

## II.  LEGAL STANDARD

"When awarding attorneys' fees, federal courts have a duty to ensure that claims for attorneys' fees are reasonable." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993). "The usual method of calculating reasonable attorneys' fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel & Restaurant Employees Local 25 v. JPR, Inc.*, 136 F.3d 794, 801

(D.C. Cir. 1998). In "rare" and "exceptional" circumstances, the lodestar amount may be adjusted by a multiplier. *Id.* (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). However, in class action cases in which the plaintiff class recovers benefits from a common fund, the favored method of calculating attorneys' fees is to award a percentage of the fund. *See Swedish Hosp.*, 1 F.3d at 1267-71; *see also In re Broadwing, Inc., ERISA Litig.*, 252 F.R.D. 369, 380-81 (S.D.Ohio 2006) (awarding attorneys' fees of $2.53 million from the common fund in ERISA class action litigation). Such awards are favored because they "directly align[] the interests of the class and its counsel and provide[] a powerful incentive for the efficient prosecution and early resolution of litigation." *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 6 (D.D.C. 2008) (citations omitted). In addition, "[t]he doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Thus, the common fund doctrine is "designed to spread the costs of litigation among all the beneficiaries of an identifiable fund." *Bebchick v. Washington Metropolitan Area Transit Com.*, 805 F.2d 396, 402 (D.C. Cir. 1986).

This Circuit has a stated preference for percentage-of-common-fund fee awards in cases "where class counsel's efforts have 'create[d], preserve[d], or increase[d] the value of a fund' whose proceeds will be distributed to class members." *Swedish Hosp.*, 1 F.3d at 1265; *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, *7 (D.D.C. June 16, 2003); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *6 (D.D.C. July 16, 2001). Awards of between twenty and thirty percent of the common fund have been deemed reasonable in this Circuit. *See Swedish Hosp.*, 1 F.3d at 1272; *see also Wells*, 557 F. Supp. 2d at 8 (approving a 45% award). "Larger common funds are typically associated with smaller percentage awards,

however, because even a small percentage of a very large fund yields 'a very large fee award.'" *In re Black Farmers Discrimination Litigation*, 856 F.Supp.2d 1, 39 (D.D.C. 2011) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005)). "Where the common fund is worth many millions or even billions of dollars—in so-called 'megafund' cases—an appropriate fee may be considerably less than twenty percent of the fund." *Id.* In the D.C. Circuit, "a lodestar cross-check is not required, . . . although district courts are free to employ such a cross-check at their discretion to confirm the reasonableness of an award." *In re Black Farmers Discrimination Litigation,* --- F. Supp. 2d --- , 2013 WL 3480346, *17 (D.D.C. 2013) (internal citations omitted). Accordingly, in determining an appropriate attorneys' fee in a case that has produced a common fund, courts in the District of Columbia must determine the amount of benefits in the common fund created, preserved, or increased by class counsel's efforts and the appropriate percentage of the common fund to be awarded to the attorney.

### III. DISCUSSION

**A.** *Attorneys' Fees*

  **i.** *Contents of Common Fund*

   As both parties agree that the benefits from the backloading remedy are properly a part of the common fund for the purpose of awarding attorneys' fees, the only question to be decided by the Court regarding the contents of the common fund is whether the benefits from the 1999-1 Amendment and the benefits "newly" accrued to the 978 Plan participants should be included in the common fund. Although "common fund cases typically hinge on some form of court-ordered relief," the D.C. Circuit has adopted the "catalyst theory," which allows the recovery of a common fund fee so long as the claiming parties' litigation "played a causal role in achieving the benefits for which they seek fee reimbursement." *Consolidated Edison Co. of New York, Inc.*

*v. Bodman*, 445 F.3d 438, 451, 457 (D.C. Cir. 2006). In other words, a party need not procure a final judgment on the merits to be awarded attorneys' fees; "when 'parties . . . obtain through settlement or otherwise, substantial relief prior to adjudication on the merits," they may recover attorneys' fees if their claims "are the 'catalyst' for the defendants' subsequent remedial actions." *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 143 (D.D.C. 2007). For the litigation to be deemed a catalyst, the party seeking attorneys' fees must establish that the lawsuit was a "'causal, necessary, or substantial factor in obtaining the result' plaintiff sought"—"that it is more probable than not that the opposing party would not have performed the desired act absent the lawsuit." *Thomas v. Network Solutions, Inc.*, 2001 U.S. Dist. LEXIS 25252, at *11-12 (D.D.C. 2001) (quoting *Public Citizen Health Research Group v. Young*, 909 F.2d 546, 549 (D.C. Cir. 1990)).

### 1. 1999-1 Amendment

The Plaintiff argues that the increased benefits from the 1999-1 Amendment should be included in the common fund because Hilton adopted the Amendment exclusively in response to the present litigation. The Plaintiff contends that Hilton itself repeatedly stated that the Amendment was adopted in response to this litigation and for the purpose of eliminating the controversy being litigated. The Defendants argue that the 1999-1 Amendment was not adopted in response to the present litigation, but voluntarily adopted by Hilton outside of the court's jurisdiction.

The Court agrees with the Plaintiff that the benefits from Hilton's 1999-1 Amendment to the Plan are properly part of the common fund. When the Plaintiff filed his initial complaint in June 1998, the Plaintiff alleged, among other claims, that Hilton's retirement Plan backloaded benefit accruals in violation of ERISA and sought relief for this unlawful practice. Hilton's

1999-1 Amendment created a new formula to govern benefit accruals in compliance with ERISA's fractional rule. Consequently, through Hilton's 1999-1 Amendment, the Plaintiffs received substantial relief prior to adjudication on the merits.

Furthermore, the Plaintiff has met his burden of establishing that it is more likely than not that the 1999-1 Amendment was a 'causal, necessary, or substantial factor in obtaining the result' plaintiff sought. The Plaintiff notes that the present action was filed on June 17, 1998. Throughout discovery and prior to the class being certified, Hilton consistently maintained that its retirement Plan complied with ERISA's 133 1/3% rule. On May 11, 1999, the Court certified the class covering "all former and current employees of Hilton Hotels Corporation . . . whose Hilton Hotels' pension benefits have been, or will be, reduced as a result of the Defendants' failure to accrue retirement benefits at the annual rates that ERISA requires." *Kifafi*, 189 F.R.D. 174, 176 (D.D.C. 1999). Then, on August 26, 1999, Hilton amended its Plan to adopt Amendment 1999-1 and made the Amendment retroactive. The Plaintiff notes that the Amendment itself specifically states that "the Company and the Plan are defendants in a civil action pending in the United States District Court for the District of Columbia styled *Kifafi v. Hilton Hotels Retirement Plan, et al*" and that the Amendment is adopted "to provide benefit increases to participants for the purpose of eliminating any controversy regarding the propriety [sic] of the rate of benefit accruals under the plan." Pl. SJ Ex. 11. In addition, Hilton's Form 5500 Annual Reports in 2000 and 2001 stated that implementation of the 1999-1 Amendment is contingent "upon the settlement of the associated litigation."[4] Pl. SJ Exs. 24 & 25. Moreover, in moving for summary judgment, the Defendants stated that "[r]ather than debate the accrual issue

---

[4] Reflective of Hilton's intent to use the 1999-1 Amendment to resolve the present litigation is the fact that the 1999-1 Amendment was not implemented until 2007 and was only partially implemented at that time.

with plaintiff, Hilton modified the Plan with the approval of the IRS," and "the 1999 Amendment was intended to eliminate any question that the Plan was in full compliance with ERISA § 204." Def.'s Mot. Summ. J. at 29-30. The Defendants also argued that the 1999-1 Amendment provided "complete relief" for the backloading violations in this case thereby "mooting" those claims. *Id.* at 30-31. Even before the D.C. Circuit Court of Appeals, the Defendants identified the primary issue on appeal as: "Whether the District Court erred in holding that the 1999 Amendment to the Plan did not bring the Plan into compliance with ERISA's anti-backloading rules and effectively mooted Plaintiff's backloading claim." C.A. 11-7113, Doc.#1340174 (11/4/2011), at 2. The Defendant makes no argument contrary to this evidence other than to assert that Hilton's adoption of the 1999-1 Amendment was "voluntary." *Cf. Consolidated Edison*, 445 F.3d at 457 (discussing cases where attorneys' fees were awarded under the catalyst theory when the defendants, after the suit was filed, voluntarily abandoned the project plaintiffs had sued to enjoin).

The Defendants' argument that the 1999-1 Amendment was "outside the Court's jurisdiction" is unavailing. The catalyst theory allows recovery for success that comes through an "out of court agreement" so long as it is "caused in some way by court action" and "potentially amount[s] to success on the merits." *Scarangella v. Group Health, Inc.*, 731 F.3d 146, 154-55 (2d Cir. 2013). Judicial imprimatur, such as through a final judgment or consent decree, is not required under the catalyst theory for the relief to be brought into the scope of a case for purposes of awarding attorneys' fees. *See Stivers v. Pierce*, 71 F.3d 732, 751 (9th Cir. 1995). It is sufficient that the relief created by the defendant provides "some of the benefit sought" by the plaintiff in the suit and that the litigation was the but-for cause of the relief. *American Lands Alliance*, 525 F. Supp. 2d at 143 (quoting *Sierra Club v. E.P.A.*, 322 F.3d 718,

727 (D.C. Cir. 2003)); *see also Stivers*, 71 F.3d at 751 ("voluntary action, such as a change in conduct that addresses the grievance, is sufficient. . . . The focus is on the substance of the relief granted.").

Here, the relief provided by Hilton's 1999-1 Amendment directly responded to the violation alleged in the Plaintiff's complaint. Indeed, the Defendants admitted that Hilton sought to provide "complete relief" to the Plaintiff's backloading claim through the 1999-1 Amendment and "moot" the present litigation. In cases where a defendant's voluntary action has rendered a plaintiff's suit moot, courts have awarded the plaintiffs attorneys' fees. *See Consolidated Edison Co.*, 445 F.3d at 457 (discussing cases); *see also Becker v. The Weinberg Group, Inc.*, 554 F. Supp. 2d 9, 17 (D.D.C. 2008) (awarding attorneys' fees in ERISA case where plaintiff alleged company failed to pay pension benefits and Plan administrator subsequently personally borrowed $3 million during litigation to contribute to the Plan in order to fully fund it thus rendering plaintiff's claim moot). The fact that this Court found that the 1999-1 Amendment did not offer *complete* relief to the Plaintiff's claims because it failed to address the Plan's pre-Amendment ERISA violations does not mean the relief offered by the 1999-1 Amendment was outside the Court's jurisdiction and should not be reflected in the common fund.[5] *See Carlson v. HSBC-North America (US) Retirement Income Plan*, ---Fed.Appx. ---, 2013 WL 4838835, at *5 (2d Cir. 2013) (awarding attorneys' fees where lawsuit prompted defendants to modify their ERISA plan giving plaintiff most, but not all, of the benefits Plaintiff sought to obtain through her litigation)*;*

---

[5] The Court stated in its December 28, 2011, Order that: "the payment of benefits under the 1999-1 Amendment are outside the scope of this case. The Plaintiff never challenged the Amendment, and the Court has never ruled on its validity except to say that it did not moot the class' backloading claims." 12/28/2011 Order, ECF No. [304], at 8. However, the fact that the *payment* of the baseline benefits under the 1999-1 Amendment and the Amendment's validity has always been outside the scope of this case, does not mean that the 1999-1 Amendment did not offer relief to the plaintiff class and that the relief was not the result of the present litigation.

*Stivers*, 71 F.3d at 753 (awarding attorneys' fees where, after the action was commenced, defendants agreed to award plaintiff some of the relief sought and the plaintiffs subsequently dropped their claim for injunctive relief). Accordingly, the value of the benefits from the 1999-1 Amendment shall be included in the common fund recovery.

However, the Court cannot actually award Class Counsel 15% of the total 1999-1 Amendment. The 1999-1 Amendment benefit has already been placed in pay status or paid to certain class members. ERISA prohibits the alienation of retirement benefits once they have been placed in pay status or paid out. *See* 29 U.S.C. § 1056(d)(1). Consequently, attorneys' fees cannot be awarded from the portion of the 1999-1 Amendment benefit that has already been put in pay status or paid. *See Carlson*, 2013 WL 4838835, at *3-4. The Plaintiff argues that Hilton should be required to pay the 15% common fund award for the portion of the 1999-1 Amendment benefit that has already become vested. The Court finds this approach problematic for several reasons. First, the Court does not want to effectively punish Hilton for seeking to offer relief to the plaintiff class. By requiring Hilton to pay the attorneys' fee award for the portion of the 1999-1 Amendment that has already been placed in pay status or paid out, the Court would be "double-taxing" Hilton as Hilton would still be paying the full amount of the 1999-1 Amendment benefit increase. Apparently to avoid such double-taxing, the Plaintiff suggests that the Court simultaneously reduce the amount of the benefit increase to be paid to the rest of the class. This is not a viable solution, however, because each member of the plaintiff class has already received notice of the exact amount of his or her benefit increase and the percentage—15%—by which it will be decreased to pay for attorneys' fees. Moreover, further reducing the amount of the prospective benefits due to the plaintiff class to make up for the inalienability of a portion of the 1999-1 Amendment benefits would amount to no more than an

13

end run around ERISA's anti-alienability provision.

The Plaintiff also argues that Hilton should have sought permission from the Court prior to distributing a portion of the 1999-1 Amendment benefits so that a portion of the benefits could have been set aside for attorneys' fees. The Plaintiff appears to suggest that since Hilton failed to distribute the benefits through a Court order it should now be required to pay this portion of the attorneys' fee out-of-pocket. However, the fact of the matter is that neither party approached the Court in 2007 when a portion of the 1999-1 Amendment benefits were distributed to raise this issue. As stated before, the Court is not now inclined to punish Hilton for seeking to offer relief to the plaintiff class. Accordingly, attorneys' fees shall only be awarded from the 1999-1 Amendment benefits that have not yet been put in pay status or paid out to class members.

### 2. Accrued Benefits for 978 "New" Individuals

The Plaintiff also asks the Court to include in the common fund the "new accrued benefits" for 978 vested employees in the Plan database, which were purportedly not listed in previous versions of the Plan database. The Defendants respond that these benefits should not be counted in the common fund because they accrued under the original Plan and, "in most cases, Hilton had already recognized that these benefits were due—and in some cases already paid—to the participants, or, in other cases, the benefits may never be due." Def.s' Opp'n at 11. The Defendants explain that, in large part, these benefits only recently appeared in Hilton's database because a database error was identified. *Id.* at 12. The other 441 of the 978 participants have died and Hilton is now searching for a beneficiary. In short, the Defendants contend that the present litigation was not a catalyst for these benefits.

The Court agrees with the Defendant that the benefits accrued to these 978 individuals under the original Plan should not be counted in the common fund because the present litigation

was not a catalyst for their creation. None of these 978 individuals accrued benefits under the original Plan because of Kifafi's claims or the Court's rulings in this case. The Court has previously indicated that the Plaintiff's objections to revisions to the database when there is no evidence that the revisions were taken in bad faith or are linked to the underlying vesting or backloading violations, "do not fall within the scope of the Plaintiff's claims." 12/28/11 Order, ECF No. [304], at 5; *see also Kifafi*, 826 F. Supp. 2d at 37, 40 (revisions to the database between 2005 and 2009 that were a result of "routine corrections to the Plan database and . . . not the result of any effort by Hilton to avoid responsibility for the backloading and vesting violations found by the Court "fall outside the scope of the claims in the litigation"). Moreover, the payment of original benefits for vested participants is not a part of this case; the Plaintiff never asserted in his complaint, and the Court never found, that Defendants failed to pay benefits prescribed by the Plan. By contrast, the 1999-1 Amendment directly responded to one of the Plaintiff's principal claims in his Complaint. In any event, it appears that the Plaintiff has abandoned his argument regarding these 978 individuals as mention of these benefits appears nowhere in the Proposed Order the Plaintiff submitted to the Court on October 14, 2013. *See* Proposed Order, ECF No. [368-4]. Consequently, attorneys' fees shall not be awarded from the original benefits received by these 978 individuals.

### 3.  Total Amount of Common Fund

Having established that the benefits from the backloading remedy and the 1999-1 Amendment that have not been placed in pay status or paid out constitute the common fund for the purpose of awarding attorneys' fees, the Court must now consider the actual value of the common fund. It is important to note that the value of the common fund is important to the Court only as a means for gauging the reasonableness of the Plaintiff's requested percentage

award. The Notice sent to all class members indicated that the attorneys' fee award would be compiled from 15% of *each member's benefit increase*, thus the Court need not decide the actual amount of attorneys' fees, just the appropriate percentage to be awarded from what the Court determined above constitutes the benefit increases attributable to this litigation, i.e. the common fund.

When the issue of attorneys' fees was initially briefed, the parties disagreed about the value of the benefits to be included in the common fund. Since that time, the parties have come to an agreement to value the common fund at $146.75 million for the Court's purposes in ruling on the attorney's fees motion. This amount represents the value of the benefits from the backloading remedy and all of the benefits attributable to the 1999-1 Amendment. As the Court held above that attorneys' fees cannot be awarded from the 1999-1 Amendment benefits that have already been placed in pay status or paid out, the value of the common fund must be reduced by the amount of these inalienable benefits. Consequently, the Court shall value the common fund at slightly over $140 million. *See* Decl. of Pl.'s Actuarial Expert Claude Poulin, ECF No. [308-3], ¶ 3 (valuing the portion of the 1999-1 Amendment benefits that have already been placed in pay status or paid out at $5.85 million).

### ii. *Appropriate Percentage of Common Fund*

The Court must now evaluate the reasonableness of the Plaintiff's request to award Class Counsel 15% of the common fund in attorney fees. In evaluating fee requests under the percentage-of-recovery method, the Court examines the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by class members to the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by class counsel; and (7) the award in similar cases.

16

*Cohen v. Chilcott*, 522 F. Supp. 2d 105, 122 (D.D.C. 2007) (citing *Lorazepam*, 2003 WL 22037741, at *8).

### 1. Size of Fund and Number of Persons benefitted

The substantial size of the common fund and the benefits class weigh in favor of the requested fee. As a result of this litigation, nearly 23,000 people will receive benefit increases. Class Counsel has spent substantial time identifying each individual who will benefit from this litigation ensuring that each is personally notified of their benefit increase and aware of how to receive payment of his or her benefits and who to address with any questions or concerns. The amount of relief to the plaintiff class is also very large, both in terms of ERISA class actions and in absolute terms. *See In re AOL Time Warner ERISA Litigation*, 2007 WL 3145111, at *1 (S.D.N.Y. 2007) (describing ERISA settlements of $8.5 million, $78 million, and $100 million as "large ERISA settlements"). "Courts have regarded exceptional benefits to a large class as grounds for a higher fee award." *Vitamins*, 2001 WL 34312839, at *11. Moreover, this litigation led to several million dollars in benefits for newly vested participants and participants who will become vested as a result of the union service claims process. Although the Plaintiff is not asking for these benefits to be considered as part of the common fund, this additional relief further bolsters the reasonableness of the Plaintiff's requested award. *See Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011) (finding reasonableness of fee award bolstered by the fact that Class Counsel also obtained equitable relief in the form of a *cy pres* fund).

### 2. Objection to Fees by Class Members

Out of a plaintiff class of almost 23,000 persons, only five objections were received to the requested attorney fee award. Of those five objections, three objected to the amount of the

award, while two objected only to the award being paid out of the common fund and requested that the award be paid by Hilton instead. In light of the fact that the parties undertook substantial efforts to ensure that each class member had notice of the requested attorney fee award and 70% of the class affirmatively responded to the reward and attorneys' fee notice,[6] this small number of objections weighs in favor of the requested fee.

### 3. Skill and Efficiency of Class Counsel

The skill and efficiency with which Class Counsel fought this case for more than thirteen years also greatly weighs in favor of the requested attorneys' fee. Lead Counsel is a leading lawyer in the field of ERISA litigation and backloading and vesting issues in particular. Lead Counsel authored one of the primary texts on pension claims under ERISA, which the Supreme Court and five circuits have cited. *See* PENSION CLAIMS: RIGHTS AND OBLIGATIONS (2d ed. 1993) (cited in *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 436 n. 1 (1999)). In addition, Lead Counsel has served in the same capacity in ERISA cases across the country and before the Supreme Court, including *Page/Collins v. PBGC*, 968 F.2d 1310 (D.C. Cir. 1992), a class action in the District of Columbia that produced a $1 billion recovery, the largest recovery in the over thirty-five year history of ERISA. *See* Decl. of Stephen R. Bruce, ¶ 10. The three additional lawyers that worked on this litigation are also highly seasoned attorneys in ERISA litigation. *See* Decl. of Stephen R. Bruce ¶¶ 8, 12.

Furthermore, this thirteen-year legally and mathematically complex litigation, which resulted in a common fund worth over $100 million and benefiting nearly 23,000 individuals, was undertaken by only two attorneys with one additional attorney lending his assistance during

---

6 As of October 14, 2013, over 70% of the class had affirmatively responded to the reward and attorneys' fee notice by completing and returning address verification forms or updated beneficiary information.

the first part of the litigation and another during the latter part of the litigation. In total, these four attorneys report a large, but ultimately lean number of hours working on this case given its complexity and duration. *Cf. Hubbard v.* Donahoe, --- F. Supp. 2d ---, 2013 WL 3943495, *9 (D.D.C. 2013) (reducing the attorneys' fee in part because the "9,000 hours spent litigating this matter were, to say the least, excessively disproportionate to the legal complexity of the case."); *In re LivingSocial Marketing and Sales Practice Litigation*, --- F.R.D. ---, 2013 WL 1181489, *17, 19 (D.D.C. 2013) (reducing fee where the court found the number of attorneys and hours spent on the case were over-billed and inefficient).

### 4. Complexity and Duration of Litigation

The considerable length and complexity of this litigation also lend support to a substantial attorneys' fee. This case stretched over more than thirteen years and involved near constant litigation either before this Court, Magistrate Judge Alan Kay, or the D.C. Circuit Court of Appeals. As the Court of Appeals recognized in its opinion affirming this Court's liability and relief determinations, this case involved the application of "complex law to complex facts," which were made even more complex by the repeated amendments Hilton made to the Plan throughout the litigation. *Kifafi*, 701 F.3d at 727, 729. Indeed, as this Court stated, "few cases have analyzed ERISA's prohibition on backloading in factually similar circumstances (and none in this Circuit) . . . ." *Kifafi*, 616 F. Supp. 2d at 25-26. *Cf. LivingSocial*, 2013 WL 1181489, at *18 (reducing requested fee where the case settled relatively quick and presented no new legal issues). In total, this case generated eight reported opinions on subjects ranging from class certification, renewed motions for class certification, mootness, backloading, vesting, equitable relief, pre-judgment interest, notice, and stays.

Moreover, unlike many ERISA cases, most of which end in early settlement, class counsel in the present litigation undertook substantial discovery, including conducting fourteen depositions, reviewing tens of thousands of pages of documents and twenty CDs of electronic records, and producing extensive expert analyses of this information. As mentioned before, Class Counsel and their experts identified each person who should be vested and calculated the benefits every class member needed to remedy the backloading violation. Class Counsel also prepared comments to the IRS on Hilton's application for determination of the 1999-1 Amendment which led to the IRS Technical Advice Memorandum confirming that Hilton's pre-Amendment plan violated the backloading rules.

### 5. Risk of Nonpayment

The risk of nonpayment in this litigation was high. Class Counsel agreed to represent Mr. Kifafi and the class on a contingency fee basis. When Class Counsel took the case, no other successful class actions had been brought over vesting and backloading violations, the most similar cases involved only one litigant.[7] Pl.'s Mot. at 14. Moreover, the Court initially refused to certify the vesting class on the basis that Mr. Kifafi had failed "to show that his individual circumstances give rise to a generally applicable practice that ought to be tried on a class-wide basis." *See Kifafi v. Hilton Hotels Retirement Plan*, 189 F.R.D. at 179-80. Class Counsel subsequently obtained an Order from Magistrate Judge Alan Kay that allowed Counsel to obtain additional discovery and, approximately four years after initially attempting to certify the vesting class, succeeded in certifying four subclasses upon Counsel's motion for reconsideration. *See Kifafi v. Hilton Hotels Retirement Plan*, 228 F.R.D. 382, 386-89 (D.D.C. 2005). In addition, in light of Hilton's continuing Amendments to the Plan and the many defenses they presented,

---

7 *See Holt v. Winpisinger*, 811 F.2d 1532, 1537 (D.C. Cir. 1987), *DeVito v. Local 819 Pension Fund,* 975 F. Suppp. 258, 267-60 (S.D.N.Y. 1997).

"[t]he risk of nonpayment through either an award of summary judgment or loss at trial was significant and real in this case." *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 364 (D.D.C. 2007) (quoting *Lorazepam*, 2003 WL 22037741, at *8). Finally, this litigation continued for over thirteen years during which Plaintiff's Counsel incurred $603,000 in out of pocket expenses with no reimbursement for expenses in many instances incurred close to a decade prior. Decl. of Stephen R. Bruce ¶¶ 15-16. Consequently, the risk of nonpayment weighs strongly in favor of awarding the requested attorneys' fee.

### 6. Amount of Time Devoted by Class Counsel

The number of hours and years Class Counsel devoted to this litigation also supports the Plaintiffs' attorneys' fee request. As has been repeatedly emphasized, Class Counsel persisted in this litigation for over thirteen years devoting 4,800 hours of billable time to the case. This litigation also required a substantial amount of actuarial and financial expert analysis. At different points during the litigation, Class Counsel retained a benefits consultant assisted by a consulting company to conduct analysis of Hilton's vesting records, as well as an actuarial expert and two financial experts who spent significant amounts of time analyzing tens of thousands of pages of paper and electronic records documenting Hilton employee retirement benefits. Decl. of Stephen R. Bruce ¶¶ 13-14.

### 7. Attorney Fee Awards in Similar Cases

Finally, the Court must compare the requested award in this case to attorneys' fees awarded in similar cases. The Defendants' primary argument against the Plaintiff's requested attorneys' fees is that the Plaintiff's 15% request is higher than the percentage awarded in other large common fund cases. In a majority of common fund class actions in the District of Columbia, "attorneys' fee 'awards fall between twenty and thirty percent' of the fund." *Black*

*Farmers Discrimination Litigation*, 856 F.Supp.2d at 39 (quoting *Swedish Hosp. Corp*, 1 F.3d at 1272); *see also In re Dep't of Veterans Affairs Data Theft Litig.*, 653 F. Supp. 2d 58, 61 (D.D.C. 2009) ("The majority of fee awards nationally appear to fall in a range of 20 percent to 30 percent of the common fund.").  Although the D.C. Circuit has not adopted a formal sliding scale approach, the Defendant is correct that when common funds do become very large courts have tended to award a lower percentage as attorneys' fees, usually under 20%.  *See Vitamins*, 2001 WL 34312839, at *6 ("In cases regarded as 'mega-fund' cases, *i.e.* recoveries of $100 million plus, fees of fifteen percent are common."); *Black Farmers Discrimination Litig.*, 856 F. Supp. 2d at 40 ("According to one study, in cases involving common funds 'from $500 million to $1 billion' in 2006 and 2007, 'the mean and median awards were both 12.9% of the fund.").  The common fund recovery in this case represents a substantial recovery for a class action suit. Nevertheless, the Plaintiff's request of 15% of the common fund remains within the realm of reasonableness, especially for comparable ERISA cases.  *See Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) (awarding 24% fee of $180 million common fund settlement in eight-year ERISA class action litigation noting that "the market rate for ERISA class action attorney's fees is a contingency fee between 25% and 33%); *AOL Time Warner ERISA Litig.*, 2007 WL 3145111, at *1 (awarding a 17.9% fee for $100 million ERISA class action settlement common fund); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 U.S. Dist. LEXIS 1819, *5-7 (S.D.Ill. Jan. 22, 2004) (awarding 29% of $240 million ERISA recovery); *see also Trombley v. Nat. City Bank*, 826 F. Supp. 2d 179, 207 (D.D.C. 2011) (explaining that class counsel was awarded 30% of a $410 settlement fund in parallel multi-district litigation against Bank of America, *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1359 (S.D.Fla. 2011)); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th

Cir. 2002) (awarding 28% of $96.8 million common fund settlement); *Vitamins*, 2001 WL 34312839, at *10-11 (awarding $122,438,032 in attorneys' fees, which represented a one-third percentage of the settlement fund).

The Defendants also argue that the Plaintiff's request is unreasonable because 15% of the common fund results in an award several times greater than the amount Class Counsel would have charged the Plaintiff at their billable rate. The D.C. Circuit does not require district courts to conduct a lodestar cross-check, *see Black Farmers Discrimination Litigation,* 2013 WL 3480346, at *17, and the Defendant did not urge the Court to calculate attorneys' fees based on a lodestar amount. Indeed, courts have found that "a pure percentage fee approach best replicate[s] the market for ERISA class action attorneys," and that the "market for ERISA Class action attorney's fees is a contingency fee between 25% and 33%." *Williams*, 658 F.3d at 636. Because "the percentage of recovery method is meant to simulate awards that would otherwise prevail in the market," the Court finds a 15% attorneys' fee recovery in this case to be within the realm of reasonableness. *Vitamins*, 2001 WL 34312839, at *12.

### 8. Conclusion

In light of the skill and dedication exhibited by Class Counsel, the substantial length and complexity of this litigation, the risks assumed by Counsel, and the substantial benefits secured by Counsel for the class, the Court concludes that a fee of 15% of the common fund is fair and reasonable. Therefore, the Court shall award Class Counsel attorneys' fees totaling 15% of the common fund.

### B.    *Expenses*

"In addition to being entitled to reasonable attorneys['] fees, class counsel in common fund cases are also entitled to reasonable litigation expenses from that fund." *Wells*, 557 F.

Supp. 2d at 8 (quoting *Lorazepam*, 2003 WL 22037741, at *10). The Plaintiff seeks reimbursement for $603,000[8] in expenses incurred by Class Counsel during the litigation. Class Counsel has provided the Court with documentation to substantiate the majority of these expenses. *See* Decl. of Stephen R. Bruce, ¶ 16 and Ex. A. Only three class members objected to the award of expenses and two class members objected to the expenses being paid out of the common fund, instead of by Hilton. As the amount of expenses appears reasonable and the Defendant does not contest the amount, the Court shall award $603,000 in expenses to Class Counsel from the common fund recovery.

**C.    *Incentive Award***

Finally, Plaintiff requests that $50,000 be paid to the named Plaintiff, Jamal Kifafi, as an award for his service as class representative. Such incentive awards are not uncommon in common fund class actions and are used to compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *See Lorazepam*, 205 F.R.D. at 400. "In deciding whether to grant incentive awards and the amounts of such awards, courts consider factors such as 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursing the litigation.'" *Lorazepam*, 2003 WL 22037741, at *10 (quoting *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir.1998)).

Mr. Kifafi regularly consulted with Class Counsel throughout the more than thirteen years of litigation and regularly attended court proceedings, including seven mediation sessions with Magistrate Judge Alan Kay. Decl of Stephen R. Bruce ¶ 21. In addition, Mr. Kifafi procured

---

[8] The Plaintiff initially requested $527,576 in expenses. However, in Class Counsel's Certificate of FRCP 23(h)(1) Notice, ECF No. [368], the Plaintiff requested the expenses be increased to account for costs related to complying with Fed. R. Civ. P. 23(h)(1) Notice requirements. The Court finds such an increase reasonable.

documents from Hilton's offices in Washington, D.C. to assist with the case, and was extensively questioned during his day-long deposition by the Defendants, at times about his personal life and travels. *Id.* ¶¶ 19-20. Mr. Kifafi made sustained contributions to this lengthy litigation, which ultimately resulted in one of the largest ERISA common funds. The requested incentive award amounts to only approximately .035% of the substantial common fund that will benefit the class as a result of this litigation. *Cf. Lorazepam*, 2003 WL 22037741, at *11 (approving incentive award that amounted to "only about 0.2%" of the common fund in part because the incentive award was small in relation to the fund from which the award was made). Moreover, only three class members objected to the incentive award and one other class member objected to the award being paid out of the common fund, instead of by Hilton. The Defendant does not contest the Plaintiff's request of an incentive award. Accordingly, the Court finds that the requested amount of $50,000 is reasonable, and the Court shall award Mr. Kifafi $50,000 from the common fund recovery.[9]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Plaintiff's [308] Motion for Attorneys' Fees, expenses, and Incentive Award and orders that Class Counsel be paid 15% of the common fund in attorneys' fees. The Court further orders that Class Counsel be paid $603,000 in expenses and that the named Plaintiff, Jamal Kifafi, be awarded $50,000 as an incentive award, both awards to be paid from the common fund recovery.

An appropriate Order accompanies this Memorandum Opinion.

---

[9] In the Proposed Order the Plaintiff filed with this Court on October 14, 2013, *see* ECF No. [368], the Plaintiff stated that the incentive award should be paid directly by Hilton instead of out of the common fund. The Court disagrees. The whole plaintiff class benefited from the lawsuit to which Mr. Kifafi significantly contributed and thus the whole class should share in contributing to the incentive award.

_/s/_
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE