# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JAMAL J. KIFAFI, individually and on
behalf of all others similarly situated,

    Plaintiff,

      v.

HILTON HOTELS RETIREMENT PLAN,
*et al.*,

    Defendants.

**Civil Action No. 98-1517 (CKK)**

## MEMORANDUM OPINION
(June 4, 2015)

This action was brought by Plaintiff Jamal J. Kifafi, on behalf of himself and similarly

situated individuals, to recover for violations of the Employee Retirement Income Security Act

("ERISA") of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.*, in the Hilton Hotels Retirement Plan

(the "Plan"). Defendants are the Plan, the individual members of the Committee of the Plan, the

Hilton Hotels Corporation, and individual Hilton officers or directors (collectively, "Defendants"

or "Hilton"). On May 15, 2009, this Court granted-in-part Plaintiff's motion for summary

judgment, finding that Defendants had violated ERISA's anti-backloading provision, 29 U.S.C.

§ 1054(b)(1), and had violated the Plan's vesting provisions with respect to the rights of four

certified subclasses. *See Kifafi v. Hilton Hotels Retirement Plan*, 616 F. Supp. 2d 7 (D.D.C. 2009).

On August 31, 2011, the Court issued a final remedial Order requiring Defendants to amend the

Plan to remedy the backloading and vesting violations and commence awarding back payments

and increased benefits to class members. *See generally* Order (Aug. 31, 2011), ECF No. [258].

The Court stayed its August 31, 2011, Order pending the United States Court of Appeals for the

District of Columbia Circuit's resolution of Defendants' appeal of the Court's liability and remedial orders. Mem. Op. and Order (Jan. 19, 2012), ECF No. [313], at 10-11. The Court granted the stay contingent upon Defendants posting a supersedeas bond in the amount of $75.8 million to secure the judgment. *Id.* at 11. On February 4, 2015, the Court denied Plaintiff's Motion for Post-Judgment Discovery and Motion to Modify the Judgment in Aid of Enforcement and granted Defendants' Motion to Release the Supersedeas Bond Obligation, finding that Defendants have "satisfied the terms of the Court's judgment." Mem. Op. (Feb. 4, 2015), ECF No. [400], at 2. Presently before the Court is Plaintiff's Motion for Reconsideration. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court shall DENY IN PART, GRANT IN PART, and HOLD IN ABEYANCE IN PART Plaintiff's Motion for Reconsideration.

## I.    BACKGROUND

The history of the case is thoroughly laid out in the Court's prior opinions, most significantly its opinion on summary judgment, *see Kifafi v. Hilton Hotels Retirement Plan*, 616 F. Supp. 2d 7 (D.D.C. 2009), and its opinions regarding equitable remedies, *see Kifafi v. Hilton Hotels Retirement Plan*, 736 F. Supp. 2d 64 (D.D.C. 2010) (initial remedial order); *Kifafi v. Hilton Hotels Retirement Plan*, 826 F. Supp. 2d 25 (D.D.C. 2011) (final remedial order); *Kifafi v. Hilton*

---

[1] The Court's consideration is focused on the following documents: Plaintiff's Motion for Reconsideration ("Pl.'s Mot."), ECF No. [401]; Defendants' Opposition to the Plaintiff Class's Motion for Reconsideration ("Defs.' Opp'n"), ECF No. [408]; Plaintiff's Reply in Support of Motion for Reconsideration ("Pl.'s Reply"), ECF No. [409]. The Court also considered the affidavits provided by Defendants pursuant to the Court's February 4, 2015, Order: Defendants' Notice of Modifications to the Procedure for Implementing Class Remedies ("Defs.' Notice of Modifications"), ECF No. [402]; Declaration of Erin Huening ("Huening Decl."), ECF No. [403]; Declaration of Mary Nell Billings ("Billings Decl."), ECF No. [404]; Declaration of Susan McDonald ("McDonald Decl."), ECF No. [405].

*Hotels Retirement Plan*, 825 F. Supp. 2d 298 (D.D.C. 2011) (order on amendments to remedial plan).  The Court discussed the facts related to the execution of the judgment in this case in its most recent February 4, 2015, Memorandum Opinion denying Plaintiff's Motion for Post-Judgment Discovery and Modification in Aid of Enforcement and granting Defendants' Motion to Release the Supersedeas Bond Obligation.  Mem. Op. (Feb. 4, 2015).  The Court assumes familiarity with these opinions and incorporates them as part of this opinion.  Accordingly, the Court shall address only the procedural facts relevant to this Motion for Reconsideration.

In its February 4, 2015, Memorandum Opinion denying Plaintiff's Motion for Post-Judgment Discovery and Motion to Modify the Judgment in Aid of Enforcement and granting Defendants' Motion to Release the Supersedeas Bond Obligation, the Court concluded

> that Defendants are in compliance such that they satisfied the terms of the Court's August 31, 2011, judgment.  Taking into account the constantly evolving nature of providing retirement benefits, the Court is satisfied that there are no systemic problems or failures in Defendants' implementation of the judgment, only a few refinements to Defendants' forms and procedures that will further facilitate Defendants' reasonable efforts to implement the judgment.

*Id.* at 27-28.  As refinements to Defendants' forms and procedures, the Court ordered Defendants to amend the "denial letter" sent to union service vesting claimants; to eliminate the request for Death Certificates from the Information Form sent to class members going forward; to send the newly amended Information Form to surviving beneficiaries from whom Defendants have not received the requested information; and to send the retirement forms along with the increased benefits notice to class members whose addresses have been confirmed.  Order (Feb. 4, 2015), at 1-2.  In addition, the Court ordered Defendants to file several sworn affidavits prior to the expiration of the Court's jurisdiction over the implementation of the judgment in this case on February 23, 2015.  *Id.*  Specifically, the Court ordered Defendants to file a sworn affidavit

indicating whether they have verified that the addresses located by Plaintiff for the 149 "bad address" class members are indeed correct addresses; whether PBI—the search firm engaged by Defendants—has taken all steps to locate class members in conformance with prevailing industry practices; and the efforts PBI has undertaken to locate class members and to follow-up when no response is received or a notice is returned as undeliverable or as addressed to a bad address. *Id.* The Court indicated in an Order issued February 19, 2015, that "the Court's jurisdiction will continue as to the issues the Court engaged in resolving in its February 4, 2015, Order to ensure the judgment is implemented properly."  Order (Feb. 19, 2015), ECF No. [406], at 1-2.

Plaintiff now contends that the Court should reconsider its February 4, 2015, Memorandum Opinion and Order because (1) they are based on "errors of law and fact" as to Plaintiff's compliance with the Court's judgment, because of (2) "new evidence about Hilton's failure to request address and service records from Caesars Entertainment for as many as 33% of the members of the class," and because of (3) "the manifest injustice of ending this Court's supervisory jurisdiction based on eleventh-hour certifications that Hilton is 'in the process' of complying." Pl.'s Mot., at 1.  The Court shall evaluate each of Plaintiff's arguments for reconsideration in light of Federal Rule of Civil Procedure 59(e), the legal standard for motions for reconsideration.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits a party to file "[a] motion to alter or amend a judgment" within "28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).  Motions under Rule 59(e) are "disfavored" and the moving party bears the burden of establishing "extraordinary circumstances" warranting relief from a final judgment. *Niedermeier v. Office of Baucus,* 153 F.Supp.2d 23, 28 (D.D.C. 2001). Rule 59(e) motions are "discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability

of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v.*

*Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted).  Rule 59(e)

does not provide a vehicle "to relitigate old matters, or to raise arguments or present evidence that

could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker,* 554 U.S.

471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1

(2d ed. 1995)).

## III.   DISCUSSION

### A.  Alleged Factual and Legal Errors Regarding Defendants' Compliance with Judgment

Plaintiff raises a series of alleged factual and legal errors that Plaintiff contends the Court

made in resolving Defendants' Motion for Release of Supersedeas Bond Obligation and Plaintiff's

Motion for Discovery and to Enforce Judgment.  Many of these arguments are simply reiterations

or reformulations of arguments Plaintiff previously presented to the Court in the briefing of the

parties' two motions.  Nevertheless, the Court shall address each of Plaintiff's arguments in turn.

### i.   Alleged Errors in the Court's measurement of Defendants' Compliance

First, Plaintiff repeats his argument that the Court should not find Defendants in

compliance with the Court's judgment when the amount Defendants have paid toward the

judgment is lower than the stipulated value of the Court's judgment and when large numbers of

class members have not been paid or notified.  In its February 4, 2015, Memorandum Opinion, the

Court explained that it will not measure Defendants' compliance based on how close Defendants

have come to paying any estimated amount of judgment liabilities because these dollars amounts

"are broad estimates liable to constant change given the many factors that determine when and

whether a Plan participant or beneficiary will ultimately receive a retirement benefit."  Mem. Op.

(Feb. 4, 2015), at 11.  The Court's reasoning applied equally to the $146.75 million amount that

the parties stipulated was the value of the Court's judgment and on which Plaintiff now focuses his renewed argument. *See* Pl.'s Mot., at 9.  The $146.75 million stipulated value was based on actuarial estimates and assumptions and included total payments over the lives of the class, "including many payments not due until years in the future," and payments that are outside of the Court's judgment.  Defs.' Opp'n, at 17.  Accordingly, the Court finds that Plaintiff has failed to show clear error in the Court's refusal to measure Defendants' compliance by the amount of liabilities paid.

Likewise, the Court held in its February 4, 2015, Memorandum Opinion that it was not measuring Defendants' compliance based purely on the number of class members reached and paid, but based on "Defendants' efforts to remit payments to class members."  Mem. Op. (Feb. 4, 2015), at 11.  In that regard, the Court recognized "that Defendants are attempting to implement a judgment that is not static or sum certain" and that, consequently, "in evaluating whether Defendants have complied with the judgment, the Court is looking for systemic problems or failures in Defendants' implementation of the judgment."  *Id.* at 12.  Plaintiff has pointed to no new evidence, intervening change in the law, or manifest injustice that puts into question the Court's approach for measuring Defendants' compliance.

### ii.   Alleged Errors in Court's Rulings Regarding Defendants' Efforts to Contact Class Members

Plaintiff next challenges the sufficiency of Defendants' efforts to contact class members based on Defendants' recently filed affidavits averring to the efforts Defendants and PBI have taken to locate class members and to follow-up when no response is received or a notice is returned as undeliverable or as addressed to a bad address.  Plaintiff challenges the veracity of Defendants' and PBI's assertions in their affidavits as well as the sufficiency of the efforts they aver they are

undertaking to locate class members. PBI avers that their location services, when engaged by Defendants, begin by conducting a death audit, which involves searching the Social Security Administration's ("SSA") Master Death Index and state vital record sources for records of the individuals' death. McDonald Decl. ¶ 6. If a participant is deceased, a search for beneficiaries is conducted. *Id.* PBI then retrieves the individual's potential addresses from credit databases and "mails communications to the best address available seeking confirmation from the individual that they live at the identified address." *Id.* ¶ 7. If a communication is returned as undeliverable or no response is received from the individual, additional addresses found in the credit databases for that individual are mailed communications until all addresses are exhausted. *Id.* PBI provides confirmed addresses to Aon Hewitt—the Plan administrator—as well as a report indicating the participants for whom PBI was unable to confirm an address. *Id.* ¶ 8.

Defendants further aver that if PBI is unable to identify a confirmed address, Aon Hewitt has sent a Last Known Address letter to all unconfirmed addresses identified by PBI or Plaintiff's counsel asking the individual to contact Aon Hewitt to confirm that address. Huenig Decl. ¶ 7. "If no response is received from any unconfirmed address and Plaintiff's counsel or PBI subsequently provide an additional address or addresses, a Last Known Address letter is also sent to any addresses subsequently provided by Plaintiff's counsel or PBI." *Id.* For addresses to which letters are returned as undeliverable, in the ordinary course of administering the Plan at Hilton's direction, periodic searches are run with PBI, "including in January 2013, May 2013, June 2013, June 2014, and January 2015." *Id.*

Plaintiff challenges the veracity of Defendants' and PBI's affidavits alleging that Defendants' retainer of PBI to locate class members actually ended in mid-2013 and, since that time, Aon Hewitt has done nothing when a mailed notice has been returned as undeliverable or

7

has not received a response.  Pl.'s Mot., at 9-10.  Specifically, Plaintiff takes issue with Defendants' assertion that Defendants have periodically engaged PBI since 2013 to follow up on unconfirmed addresses.  Plaintiff argues that PBI's declaration describes no such activity.  Pl.'s Reply, at 6-7.  To the contrary, the Court finds that PBI's declaration does aver that "[f]rom time-to-time, Hilton engages PBI to locate individuals as part of the administration of the Hilton Hotels Retirement Plan."  McDonald Decl. ¶ 4.  Plaintiff also argues that had Defendants actually been periodically engaging PBI to locate unconfirmed addresses, Plaintiff's counsel would have been aware because Plaintiff's counsel was also researching bad addresses Hilton provided him during the same period and there was no indication that Plaintiff's counsel was duplicating periodic work being done by PBI.  Pl.'s Reply, at 7.  Plaintiff further notes that Plaintiff's counsel was also engaging PBI's services during this period and thus would have known if PBI was undertaking significant work on behalf of Defendants.  *Id.* at 8.  The Court finds Plaintiff's challenge to the veracity of Defendants' and PBI's declarations based on his own speculation as to what he would have known unavailing.  It is not inconsistent for Defendants to have periodically engaged PBI to locate unconfirmed addresses while also providing Plaintiff's counsel with the unconfirmed addresses *at Plaintiff's counsel's request*.  As both Defendants and PBI affirm in their sworn declarations that Defendants have periodically engaged PBI since 2013 to locate unconfirmed address, the Court shall accept Defendants' and PBI's descriptions of the efforts they are undertaking to locate class members.

Having accepted Defendants' and PBI's declarations detailing their class member location efforts, the Court turns to Plaintiff's argument that the efforts Defendants and PBI are undertaking are insufficient.  Plaintiff cites to Department of Labor guidelines for locating missing participants as a potential superior approach to locating class participants.  *See* Pl.'s Mot., at 10.  However, the

cited guidelines apply to terminated defined contribution plans as opposed to ongoing defined benefit plans like the plan at issue in this case and thus are not a proper measure. Although Plaintiff claims that it has continued to search and locate addresses for class members without confirmed addresses, Plaintiff does not indicate specifically what steps it has taken to locate addresses, whether the addresses it has located are confirmed, or propose steps that Defendants should be taking to locate addresses. The Court finds the procedures outlined by Defendants and PBI in their affidavits to be thorough and reasonable. However, to resolve any concern that Defendants are prematurely abandoning their efforts to locate and confirm an address, the Court shall order Defendants to follow the address location process outlined in the Heuning and McDonald affidavits for all class members for whom an address has not yet been confirmed. In addition, the Court shall order the following modifications to this address location process:

1) For non-deceased Plan participants, after PBI has exhausted all potential addresses identified in the credit databases, PBI shall search for the individual designated as the beneficiary for the Plan participant and contact this individual to inquire about the correct address of the participant;

2) If, after Aon Hewitt sends a Last Known Address letter to all unconfirmed addresses identified by PBI or Plaintiff's Counsel, no response is received or an address is returned as undeliverable, Aon Hewitt shall engage PBI no less than every two months to run a search for potential addresses for the class members with unconfirmed addresses;

3) Aon Hewitt shall send Last Known Address letters to addresses subsequently found by PBI or Plaintiff's counsel if no response is received from an address or if the address is returned as undeliverable.

9

In addition, Plaintiff contends that it was manifestly unjust for the Court to accept the certification of Hilton's Vice President for Benefits Ted Nelson as to Defendants' commitment to comply with the Court's judgment since Mr. Nelson certified that compliance was ongoing and there have been no further certifications since May 2014.  Pl.'s Mot., at 12.  First, the Court notes that it never ordered Defendants to certify their compliance with the Court's judgment and did not order Defendants to continue to certify compliance or provide the Court with any documents after its February 4, 2015, Memorandum Opinion and Order beyond the affidavits described above.  Instead, the Court accepted Mr. Nelson's declaration that "Hilton has been and will continue to take all reasonable steps within its power to comply with the Court's orders" and, specifically, to "locate participants using PBI."  Mem. Op. (Feb. 4, 2015), at 27.  As the Court stated in its February 4, 2015, Memorandum Opinion, "the Court shall hold Defendants accountable based on Mr. Nelson's commitment to complying with the judgment."  *Id.*  Nevertheless, in light of the fact that the Court will be ordering Defendants to follow the address location process outlined in the Heuning and McDonald affidavits with the modifications detailed above, the Court shall order Defendants to certify to the Court that they have or will comply with the address location process ordered by the Court for each class member for whom an address has not yet been confirmed.

### iii. Alleged Insufficiencies in Defendants' Efforts to Make Benefit Determinations for Surviving Spouses and Beneficiaries

Plaintiff next argues that the Court erred in finding Defendants in compliance with the Court's judgment because "surviving spouses and beneficiaries who have actually received notices [have been informed] that no benefit determinations will be made for at least "ninety (90) days," which Hilton recently extended to another "six months."  Pl.'s Mot., at 8.  Defendants respond that it may take up to six months for Defendants to process benefit determinations for beneficiaries because

10

> Hilton makes a diligent effort to determine whether there are other potential
> competing claimants who have a better, or equal, claim to the benefit, so that the
> correct person can be paid. This is a highly factual process. . . . Hilton cannot just
> pay a claimant because he represents that he is the heir. The length of time that the
> process takes depends on the documentation provided by the claimant. There is no
> set amount of time.

Defs.' Opp'n, at 8 n.1.

As with most of Plaintiff's arguments in his Motion for Reconsideration, Plaintiff made a similar challenge to the delay in providing surviving spouses and beneficiaries their benefits in his briefing of the parties' original motions.   A Motion for Reconsideration is not a vehicle for "relitigat[ing] old matters." *Exxon Shipping Co.,* 554 U.S. at 485 n.5.  Plaintiff has provided no new information to alter the Court's original finding that Defendants "are generally taking reasonable steps to ensure that the most class members receive their benefits while also . . . ensuring that benefits are actually dispersed to the proper payee."   Mem. Op. (Feb. 4, 2015), at 18.  The provision of benefits to surviving spouses and beneficiaries is a highly individualized and fact-bound process and Plaintiff has offered no evidence to suggest that the delays in the provision of benefits to these class members are attributable to systemic problems as opposed to difficulties arising from the particular factual circumstances of individual class members.  Such individualized problems are most appropriately dealt with through Hilton's own claims appeals process. Accordingly, the Court finds that Plaintiff has failed to show that the Court's determination that Defendants were in compliance with the Court's judgment was clearly erroneous or manifestly unjust.

### iv.   Alleged Insufficiencies in Defendants' Efforts to Notify the Social Security Administration ("SSA") of Deferred Vested Benefits

In addition, Plaintiff once again argues, as he argued originally in his Opposition to Defendant's Motion for Release of Supersedeas Bond Obligation, that the Court cannot find

Defendants in compliance with the Court's judgment because Defendants have only notified SSA of "a remarkably low 77 deferred vested benefits." Pl.'s Mot., at 11 n.5. Although Plaintiff appears to be citing updated statistics for the number of notifications received by the SSA, these new statistics do not change the Court's previous analysis of this argument. A Motion for Reconsideration is not a vehicle for "relitigat[ing] old matters." *Exxon Shipping Co.,* 554 U.S. at 485 n.5. As the Court held before, "[t]he provision of such notices to the SSA was not part of this Court's judgment." Mem. Op. (Feb. 4, 2015), at 23. Accordingly, Plaintiff's renewed complaint regarding SSA notices has no bearing on the Court's evaluation of Defendants' compliance with the Court's judgment.

### v. Defendants' Alleged Failure to Amend Document Requirements per the Court's Order

Plaintiff next alleges that Defendants have not complied with the Court's February 4, 2015, Order requiring Defendants to amend the content and procedures related to the Information Form and the Retirement Form sent to class members. Specifically, Plaintiff argues that Defendants have not truly eliminated the request for Death Certificates from the Information Form because Defendants aver in their supplemental declaration that they will still request death certificates "as needed on a case-by-case basis due to suspected inaccuracies in Social Security Master Index File records or when other information typically contained on death certificates is needed, such as birth dates and marital status at death." Defs.' Notice of Modifications, ¶ 1(c). The Court finds that Defendants are in compliance with the Court's February 4, 2015, Order. The Court's Order only required Defendants to "eliminate the request for Death Certificates *from the Information Form* sent to class members going forward." Order (Feb. 4, 2015), at 2. Moreover, this Order was to be executed only if "the Social Security Master Death Index is a reliable database." *Id.* ("IT IS FURTHER ORDERED that, assuming the Social Security Master Death Index is a reliable

database, Defendants shall eliminate the request for Death Certificates . . . ."); Mem. Op. (Feb. 4, 2015), at 19 ("unless there are grounds to assert that the Social Security Master Death Index is an unreliable source, the Court finds that eliminating the Death Certificate requirement will cut down on additional paperwork that beneficiaries need to gather").  Pursuant to the Court's Order, Defendants eliminated the "automatic request for death certificates" from the Information Form. Defs.' Notice of Modifications, ¶ 1(c).  Accordingly, the Court understands that Defendants will not request a death certificate as a prerequisite for a class member making a claim since such a request would be "unnecessarily burdensome given that Defendants can efficiently learn of a participant's date of death through the Master Death Index."  Mem. Op. (Feb. 4, 2015), at 18-19. However, the Court also understands that once a class member has made a claim and the claim has been reviewed, there may be instances where it is necessary or most helpful for Defendants to request the death certificate in order to gather additional information that would be on the death certificate.  Defendants would not be violating the Court's February 4, 2015, Order by requesting a death certificate under such circumstances.

Plaintiff also argues that Defendants have not complied with the Court's order to send Retirement Forms with the initial benefits notice if a class member's address has been confirmed because Defendants have only sent the Retirement Forms to class members whose addresses are confirmed "going forward."  Pl.'s Reply, at 16.  Plaintiff contends that to comply with the Court's Order, Defendants should send the Retirement Forms to all class members whose addresses have been confirmed, even those whose addresses were previously confirmed and whom were already sent notices of benefit increase.  *Id.*  In Plaintiff's briefing of the parties' original motions, Plaintiff did not address or request that the Retirement Forms be sent to class members whose addresses had already been confirmed and whom had already received the notice of increased benefits.

Plaintiff only now raises this argument in his *Reply* in support of his *Motion for Reconsideration*. As a result, Defendants have not had the opportunity to respond to this argument and the Court shall not address it. *See Performance Contracting, Inc. v. Rapid Response Const., Inc.*, 267 F.R.D. 422, 425 (D.D.C. 2010) ("As a general matter, it is improper for a party to raise new arguments in a reply brief because it deprives the opposing party of an opportunity to respond to them, and courts may disregard any such arguments."). As the issue of sending Retirement Forms to class members who have already received notices of increased benefits was never addressed by the parties, the Court's February 4, 2015, Order states simply that "if PBI or Defendants have confirmed a class member's address, Defendants shall send the increased benefits notice and retirement forms to the class member in the same mailing." Order (Feb. 4, 2015), at 2. Accordingly, the Court finds that Defendants did not violate the Court's February 4, 2015, Order by amending their procedures to send Retirement Forms along with increased benefits notices going forward and not retroactively.

### vi.    Alleged Error in Permitting Notarization Requirement

Plaintiff contends that the Court's approval of the notarization requirement in Defendants' Information Form as "not unduly burdensome" "does not account for current law." Pl.'s Mot., at 14. Plaintiff's sole argument in this regard is that "[d]eclarations under penalty of perjury are permitted in lieu of notarized affidavits under 28 U.S.C. §1746 and in virtually every state." *Id.* Again, Plaintiff uses his Motion for Reconsideration to make and expand upon arguments that Plaintiff could have made in the briefing of the parties' original motions. In briefing the parties' original motions, Plaintiff only stated that there is "no indication that [the notarization requirement is] necessary to satisfy the Court's judgment." Allison C. Pienta Decl., Pl.'s Ex. A, ECF No. [385-1], at 20. Plaintiff did not suggest an alternative to notarization, like Plaintiff now suggests, or

even argue that such a requirement is unduly burdensome.  The fact that federal and certain state laws *permit*, in certain circumstances, a declaration under the penalty of perjury in lieu of a notarized affidavit—a fact to which Plaintiff only now points—does not make the Court's determination that Hilton's notarization requirement was not unduly burdensome clearly erroneous or manifestly unjust.  Accordingly, the Court will not reconsider its determination as to the notarization requirement.

> vii.    **Alleged Insufficiencies in Spreadsheets Defendants Provided to Plaintiff**

Plaintiff also argues that the Court erred in finding that Defendants had provided Plaintiff with sufficient information to determine whether Defendants had complied with the Court's judgment because "the spreadsheets Plaintiff received are not comprehensive and have not been updated." Pl.'s Mot., at 11.  In making this argument, Plaintiff is once again attempting to relitigate an argument he made in his briefing of the parties' original motions.  *See* Pl.'s Resp. to Defs.' Mot. to Release Bond and in Support of Discovery and Modification to Secure Complete Relief, ECF No. [385], at 21-22, 37.  A Motion for Reconsideration is not an appropriate vehicle for such an argument.  *Exxon Shipping Co.*, 554 U.S. at 485 n.5.  Plaintiff does not provide any new evidence or argumentation to show that the Court's original determination that the Court, in its judgment,"has not required Defendants to provide any of the information Plaintiff now requests," Mem. Op. (Feb. 4, 2015), at 25, was clearly erroneous or manifestly unjust.

> viii.    **Error of Law in Ruling that "Denial" Letter Complied with**
> **ERISA/Department of Labor ("DOL") Regulations**

Finally, Plaintiff argues that the Court erred as a matter of law by approving Hilton's letters denying class members' vesting claims and only requiring Hilton to amend the letters to include an explanation of the procedures for reviewing adverse determinations.  Plaintiff argues that even with the Court-ordered amendment, Hilton's "denial" letters still fail to comply with ERISA and

15

DOL regulations which also require, among other things, "a description of any additional material or information necessary for the claimant to perfect the claim" and "reference to the specific plan provisions on which the determination is based."  Pl.'s Mot., at 19.  The Court notes that Plaintiff has used his Motion for Reconsideration to significantly expand his argument regarding the "denial" letters even though these arguments could have been raised prior to the Court ruling on Defendant's Motion for Release of Supersedeas Bond Obligation and Plaintiff's Motion for Discovery and to Enforce Judgment.  The Court's prior ruling and order to amend the "denial" letter were based on Plaintiff's more limited argument about the need to amend the "denial" letter. A motion for reconsideration is not a proper vehicle for raising arguments "that could have been raised prior to the entry of judgment." *Exxon Shipping Co.,* 554 U.S. at 485 n.5.

Nevertheless, "to avoid further dispute," Defendants indicate in their Opposition that they have "sent new letters that are amended to comply with the Court's order and resolve plaintiff's further complaint."  Defs.' Opp'n, at 41-42; *see* Mary Nell Billings Supp. Decl. ("Billings Supp. Decl."), Ex. A (Revised "Denial" Letter), ECF No. [408-2].  However, Plaintiff also challenges this revised letter on the basis that it does not provide the specific reasons for the benefit denial as required by ERISA/DOL regulations.  Pl.'s Reply, at 22-23.  In Plaintiff's Reply, Plaintiff references a third "denial" letter which Plaintiff's counsel received from Defendants on March 16, 2015, and which Plaintiff believes replaced the revised letter.  Plaintiff acknowledges that this third letter "provide[s] sufficient information at least for class counsel to appeal, even if the information continues to be insufficient for an average plan participant to appeal." Pl.'s Reply, at 23.  However, in Defendants' recently filed [412] Status Report on the Mailing of Union Service Notice and Claim Forms, Defendants explain that, contrary to Plaintiff's belief, the third letter was not the template for the "amended letters sent to union service claimants.  Instead, they were letters

16

sent to claimants responding to claims that are not part of this case." Defs.' Status Report, ECF No. [412], at 5. Accordingly, the Court must evaluate the sufficiency of the revised "denial" letter, Billings Supp. Decl., Ex. A (Revised "Denial" Letter).

Having reviewed Defendants' revised "denial" letter as well as the third letter which includes the language that Plaintiff finds acceptable, the Court now agrees with Plaintiff that the revised "denial" letter is insufficiently clear about the reason why the Plan participant "did not qualify for benefits under the Plan." Billings Supp. Decl., Ex. A (Revised "Denial" Letter). The third letter, which Defendants sent in response to claims that are not part of this case, much more clearly indicates that the claimant does not qualify for benefits because he or she does "not meet the minimum number of years of vesting service." Pl.'s Reply, Ex. 9, ECF No. [409-9] (Third "Denial" Letter); *compare with* Billings Supp. Decl, Ex. A (Revised "Denial" Letter) ("However, even with the additional service, you did not qualify for benefits under the Plan."). It is not clear to the Court why Defendants did not use this clearer and more direct language summarizing why a participant is not receiving a benefit in the revised "denial" letter sent to union service class members. Accordingly, the Court shall order Defendants to amend the revised "denial" letter, Billings Supp. Decl, Ex. A (Revised "Denial" Letter), to state that a class member does not qualify for benefits under the Plan because he or she does "not have the minimum number of years of vesting service." This newly revised "denial" letter shall be sent to all relevant class members going forward.[2]

---

[2] Plaintiff also makes an argument in his Motion for Reconsideration about 541 claimants who received an "unlawful" form letter from Defendants in February 2015 requesting additional documentation on "actual hours worked." Pl.'s Mot., at 23. Defendants argue that these claims are not part of the union service claims process and, most importantly, not part of this litigation. Defs.' Opp'n, at 37. In his Reply, Plaintiff indicates that he believes that "Hilton has effectively . . . dropped those requests" as of the beginning of March 2015. Pl.'s Reply, at 24. Accordingly,

**B.  New Evidence Regarding Caesars Entertainment Records**

Plaintiff next claims that since the Court's February 4, 2015, Memorandum Opinion and Order, new evidence has surfaced of Defendants' non-compliance with the Court's judgment. Specifically, Plaintiff explains that Hilton filed a lawsuit against Caesars Entertainment ("Caesars")—the entity that acquired Hilton's gaming operations[3]—in December 2014 in the Eastern District of Virginia concerning Caesars' obligations to fund the Plan for the *Kifafi* litigation.  Plaintiff contends that from this litigation, evidence surfaced that Caesars is responsible for 30 to 33% of the *Kifafi* liabilities and that Hilton and Caesars have had an "allocation agreement" since 1999 requiring Hilton and Caesars to provide one another with such information as is reasonably necessary to administer each party's plans.  Pl.'s Mot., at 15-19.  Plaintiff's counsel alleges that his "research indicates that the percentage of class members who became Caesars' employees and remain unpaid or unlocatable is comparable to Caesars' 30 to 33% share of the accrued benefit liabilities, yet Defendants failed to exercise their authority to request address or service records from Caesars while representing to this Court that Hilton had exhausted its records of addresses and service for vested participants as well as individuals who were potentially vested."  *Id.* at 18.

Defendants respond that the allocation agreement and, specifically, Hilton's authority to request information from Caesars is not new evidence because the allocation agreement was filed with the Securities and Exchange Commission in January 1999.  Defs.' Opp'n, at 2-3. Accordingly, Defendants urge the Court to *not* reconsider its prior judgment based on Plaintiff's

---

the Court need not address this issue.

[3] At the time of the acquisition of Hilton's gaming operations, Caesars was known as Park Place.  Pl.'s Mot., at 16.

arguments regarding Caesars.  Defendants further argue that, in any event, Plaintiff's arguments

are moot because "Defendants have now obtained addresses from Caesars." *Id.* at 24.  Defendants

allege that they requested

> Caesars search its records for any class members that are yet to be located. (Decl.
> of Mary Nell Billings ("Billings Suppl. Decl.") ¶ 2 (Mar. 9, 2015).) Caesars
> searched its records and identified addresses for 98 class members, 27 of whom
> remain employees of Caesars. (Billings Suppl. Decl. ¶ 2.) Defendants have sent
> letters to each of these 98 class members who have not already been paid or for
> whom the address obtained from Caesars was not duplicative of the address already
> available to Defendants. (Huening Suppl. Decl. ¶ 5.)

*Id.* at 25.  However, Defendants' request for Caesars' records has not resolved this issue for

Plaintiff.  Plaintiff argues in his Reply, that it is "simply implausible" that only 98 individuals from

1,315 class members whose addresses remain to be confirmed were from Caesars "when Hilton is

suing Caesars for 30-33% of the *Kifafi* liabilities and 500 participants in this group of 1,315 had

last known addresses in the states where the gaming operations that Caesars purchased were

located." Pl.'s Reply, at 21.  Plaintiff laments that Defendants have refused to identify the reason

Caesars has provided so few addresses, saying only that "there are many possible explanations,

including, among others, that Hilton retained hotels in those states after the Park Place transaction."

*Id.*

Although the allocation agreement between Hilton and Caesars is not itself new evidence,

the Court finds that the evidence making that agreement of particular importance to this case—i.e.

the evidence that Caesars is responsible for 30 to 33% of the *Kifafi* liabilities—is new evidence

revealed through the recent litigation and, thus, appropriately considered in a motion for

reconsideration.   Accordingly, to resolve the concerns raised regarding the low number of

addresses provided by Caesars, the Court shall order Defendants to obtain a sworn affidavit from

Caesars explaining why Caesars located addresses for only 98 class members and what efforts were made to locate the addresses.

### C. Court's Jurisdiction Over Implementation of Judgment

Finally, Plaintiff takes issue with the Court's termination of its jurisdiction over the implementation of the judgment in this case on February 23, 2015.  Plaintiff contends that "to prevent manifest injustice, this court must retain jurisdiction over the administration and enforcement of its orders until Hilton makes a reasonable demonstration of compliance."  Pl.'s Mot., at 6.  As an initial matter, the Court notes that Plaintiff's argument regarding the duration of the Court's jurisdiction is most appropriately considered under Federal Rule of Civil Procedure 60(b), not 59(e), because Plaintiff is challenging a judgment that was entered more than twenty-eight days before Plaintiff filed his Motion for Reconsideration.  *See* Fed. R. Civ. P. 59(e); *id.* 60(b).  The Court entered its Order establishing a two-year period of jurisdiction over the administration and enforcement of the judgment in August 2011—over three-and-a-half years ago. Order (Aug. 31, 2011), ECF No. [258], at 10-11.  The Court's February 4, 2015, Memorandum Opinion and Order simply fixed the precise end-date for the Court's jurisdiction based on the August 2011 Order.

Federal Rule of Civil Procedure 60(b) permits a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding" on one of six enumerated grounds. "[T]o secure relief under Rule 60(b), a litigant must establish not only that one of the rule's enumerated grounds for relief is satisfied, but also some 'actual prejudice' flowing from the supposed misconduct or other circumstances claimed to warrant relief." *Armenian Assembly of America, Inc. v. Cafesjian,* 758 F.3d 265, 283 (D.C. Cir. 2014).  In addition, the movant must demonstrate that he was "foreclosed from making a 'full and fair preparation or presentation of

20

[his] case.' " *F.S. v. District of Columbia*, No. CV 10-1203, 2014 WL 4923025, at *2 (D.D.C. Oct. 2, 2014).

Plaintiff has not made the showing required to meet the high bar for obtaining relief under Rule 60. Plaintiff had a chance to brief and, then, to appeal the Court's decision regarding the duration of the Court's jurisdiction in 2011. Plaintiff now argues that the Court must retain jurisdiction until Hilton makes a "reasonable demonstration of compliance," but the Court has already found that "Defendants are in compliance such that the judgment is satisfied." Mem. Op. (Feb. 4, 2015), at 24. In coming to that conclusion, the Court carefully and thoroughly considered each of the arguments that Plaintiff presented regarding Defendants' compliance with the Court's judgment. The Court found that "the fact that Defendants have not yet been able to locate or pay all of these remaining individuals is not evidence of noncompliance with the Court's judgment." *Id.* Nevertheless, the Court extended its jurisdiction so that it could resolve several outstanding issues relating to Defendants' forms and procedures for notifying and obtaining information from class members and to Defendants' efforts to locate class members. The Court has now resolved the parties' dispute regarding the "denial" letter, the Information Form, and the Retirement Form. The Court's jurisdiction will continue until the discrete issues relating to Defendants' address location process and Caesars Entertainment are resolved. The Court hereby makes clear, however, that the Court's continuing jurisdiction is not open-ended jurisdiction—it is limited to the resolution of these two discrete issues. The Court has spent many years carefully considering each of the parties' arguments and the continuing refinements and repetitions of those arguments through the parties' subsequent motions. The Court will not now cut its jurisdiction short without resolving these two discrete outstanding issues. However, Plaintiff shall not treat the Court's

continuing jurisdiction as an invitation to present or reargue all of Plaintiff's concerns about Defendants' implementation of the Court's judgment.

## IV.      CONCLUSION

For the foregoing reasons, the Court shall DENY IN PART, GRANT IN PART, and HOLD IN ABEYANCE IN PART Plaintiff's Motion for Reconsideration.  The Court shall GRANT Plaintiff's Motion for Reconsideration as to the sufficiency of Defendants' "denial" letters. Defendants shall amend their revised "denial" letter to state that a class member does not qualify for benefits under the Plan because he or she does "not have the minimum number of years of vesting service."  This newly revised "denial" letter shall be sent to all relevant class members going forward.  The Court shall HOLD Plaintiff's Motion IN ABEYANCE IN PART so that the Court can receive additional affidavits that will permit it to better evaluate 1) Defendants' certification of compliance with the Court-ordered address location process; and 2) the new evidence regarding Caesars Entertainment.  Otherwise, Plaintiff's Motion for Reconsideration is DENIED.  The Court's jurisdiction over the implementation of the judgment in this matter shall continue only for the purpose of resolving the discrete issues relating to Defendants' address location process and obtaining addresses from Caesars Entertainment.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE