## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMAL J. KIFAFI, individually and on behalf of all others similarly situated,<br><br>      Plaintiff<br><br>      v.<br><br>HILTON HOTELS RETIREMENT PLAN, *et al.*,<br><br>      Defendants | Civil Action No. 98-1517 (CKK) |

## MEMORANDUM OPINION
### (December 7, 2015)

In an Order issued June 4, 2015, ECF No. 413, the Court granted in part, denied in part, and held in abeyance in part Plaintiff's Motion for Reconsideration with respect to the Court's February 4, 2015, [399] Order, through which the Court had *granted* Defendants' [382] Motion for Release of Bond Obligation and *denied* Plaintiff's [384] Motion for Post-Judgment Discovery and Motion to Modify the Judgment in Aid of Enforcement. Through this Order, the Court resolves the remaining issues with respect to that motion, **denying** the motion insofar as it was held in abeyance previously. The Court also discusses and resolves the various issues raised by the parties in the many status reports filed between the issuance of the Court's reconsideration Order and today. *See* ECF Nos. 415 – 431. As explained further below, the Court's jurisdiction over this matter has now concluded—more than 17 years after this action was filed—and ***this case is dismissed in its entirety***.

## 1.  Background

The Court presumes familiarity with the Court's numerous previous Orders and Opinions issued over the many years this case has been pending. *See Kifafi v. Hilton Hotels Retirement Plan*, 79 F. Supp. 3d 93, 97 (D.D.C. 2015) (citing previous opinions); *see also Kifafi v. Hilton Hotels Retirement Plan*, 701 F.3d 718, 722 (D.C. Cir. 2012) (referring to twelve prior district court opinions). The Court presents the limited background necessary to explain this Order.

On August 31, 2011, the Court issued its final remedial order in this case, and "retained 'continuing and exclusive jurisdiction over the parties and over the administration and enforcement of this Order for a period of two (2) years.' " *Kifafi*, 79 F. Supp. 3d at 97 (citing Order, dated Aug. 31, 2011, ECF No. 258). The Court subsequently granted a stay pending the parties' cross-appeals to the D.C. Circuit Court of Appeals. *Id.* The stay was granted contingent on Defendants posting a bond in the amount of $75.8 million. *Id.* The Court of Appeals affirmed in all respects, and this Court's two-year

continuing and exclusive jurisdiction over the parties and over the administration and enforcement of its final remedial order began to run on February 22, 2013, the date on which the stay in this case was automatically lifted by virtue of the issuance of the mandate of the Court of Appeals. *Id.*

Through a Memorandum Opinion issued on February 4, 2015, the Court concluded that "Defendants are in compliance such that they satisfied the terms of the Court's August 31, 2011, judgment." *Id.* at 111. The Court additionally concluded that it was "satisfied that there are no systemic problems or failures in Defendants' implementation of the judgment, only a few refinements to Defendants' forms and procedures that will further facilitate Defendants reasonable efforts to implement the judgment." *Id.* Accordingly, the Court the granted Defendants' Motion for Release of Bond Obligation and denied Plaintiff's Motion for Post-Judgment Discovery and Motion to Modify the Judgment in Aid of Enforcement. Finally, in that order, the Court confirmed that the two-year period of jurisdiction would terminate on February 23, 2015, and the Court required Defendants to take certain additional discrete steps before the Court's jurisdiction terminated. *Id.* at 111-12.

Shortly after the issuance of the Court's February 4, 2015, Order—and before the Court's jurisdiction terminated on February 23, 2015—Plaintiff filed a motion for reconsideration. In setting a briefing schedule on that motion, the Court indicated that its jurisdiction would "continue as to the issues the Court engaged in resolving in its February 4, 2015, Order to ensure the judgment is implemented properly." Order, dated Feb. 19, 2015, ECF No. 399, at 1-2. On June 4, 2015, the Court resolved the motion for reconsideration, granting it in part (requiring an amendment to Defendants' denial letter), held it in abeyance with respect to Defendants' efforts to locate class members' addresses and to obtain address information from Caesars Entertainment, and denying the motion in all other respects. Order, dated June 4, 2015, ECF No. 413. Specifically, the Court required that Defendants follow certain processes for locating participants in the Hilton Hotel Retirement Plan ("Plan") specified in the Order and the accompanying Memorandum Opinion. *See id.* In addition, the Court required Defendants to file "a certification that they have or will comply with the address location process ordered by the Court for each class member for whom an address has not yet been confirmed" and to file "a sworn affidavit from Caesars Entertainment explaining why Caesars located addresses for only 98 class members and what efforts were made to locate the addresses." *Id.* The Court also stated that "the jurisdiction over the implementation of the judgment in this matter shall continue only for the purpose of resolving the discrete issues relating to Defendants' address location process and obtaining addresses from Caesars Entertainment." *Id.* It is those issues—which have been the subject of numerous filings by the parties over the past six months—that are now before the Court.

**2. Caesars Entertainment**

In Plaintiff's Motion for Reconsideration, Plaintiff pointed to an arrangement with Caesars Entertainment to fund approximately one-third of the liabilities of the Plan. In the briefing on the Motion for Reconsideration, Defendants indicated that Caesars—not a party to this action—searched its records for any class members that had not yet been located and that Caesars had located 98 class members. Memorandum Opinion, ECF No. 414, at 19. Plaintiff argues that it was implausible that Caesars had located only 98 members given that (1) the Plan had filed a separate action seeking to recover approximately one-third of the *Kifafi* liabilities from Caesars and that (2) approximately 500 of the not-yet-located class members were associated with states where Caesars operated facilities. *See id.* In light of that dispute between the parties, the Court ordered Defendants to obtain a sworn affidavit from Caesars explaining why Caesars located addresses for only 98 class members and explaining what efforts were made to locate the addresses. *See id.* at 19-20. After some difficulty obtaining such an affidavit, Defendants ultimately obtained such an affidavit and filed it with the Court. *See* Defs.' Notice of Compliance, ECF No. 420, Affidavit of Brittany Davis ("Davis Aff."). Plaintiff continues to dispute whether the affidavit is sufficient. However, after reviewing the affidavit and the additional materials the parties have submitted, the Court concludes that the affidavit is sufficient and that Defendants have adequately explained why the number of addresses provided by Caesars was limited.

Davis explained the search that was conducted in her affidavit as follows:

8. On Friday, January 30th, 2015, Mary Nell Billings – Director of Global Retirement Programs for Hilton Worldwide – reached out to Jeremy Galinat of CES by email. (Email attached at Exhibit A.) In her email, Ms. Billings asked Mr. Galinat to assist her with filling in addresses for a list of Plan participants. The email does not indicate that the request has any relation to a court order.

9. Using the Social Security numbers provided in the Excel spreadsheet attached to Ms. Billings' email, I ran a search for addresses contained in our Harrahsl database system. Of 1,315 Social Security numbers searched, only 98 were found in the Harrahs1 database. This is likely because the remaining 1,217 persons in the plan were not employed by CEOC or its affiliates as of or subsequent to the date the Harrahsl system went live.

10. On July 15, 2015, I was informed that Plaintiff's counsel in this matter had requested an additional search on 543 names.

11. Using the Social Security numbers provided by Plaintiff's counsel, I ran a search for addresses contained in our Harrahsl database system. Of 543 Social Security numbers searched, only 61 were found in the Harrahs1 database. Based on the limited information available to me, I believe we only have information for a fraction of this group because the majority of

> these individuals were never employed by CEOC or its affiliates and thus
> their personal information was never stored in our systems.

Davis Aff. ¶¶ 8-11. In addition, in the affidavit, Davis provides some background to her explanation of her search and states that Park Place, effectively a predecessor of Caesars, took on pension obligations when it "acquired a casino located in New Orleans called the 'Queen of New Orleans at the Hilton,' and later named the 'Flamingo New Orleans.' " *Id.* ¶ 5. Davis does not mention any other casino facilities by name in the affidavit. Based on this reference to the Queen of New Orleans, Plaintiff infers that the search only encompassed former employees of that facility rather than of all Caesars facilities. Defendants disagree. The Court agrees with Defendants that the affidavit indicates that the Caesars conducted a search that encompassed all facilities.

Davis states that Defendants were seeking addresses on the list of people provided, and the email attached to her affidavit indicates that Defendants stated that they were attempting to "locate plan participants in the Hilton Hotels Retirement Plan that are/were Caesar's employees and need any updated addresses you may have on file." Davis Aff., Ex. A. Nowhere does Davis suggest that the search was limited to employees who had worked only at the Queen of New Orleans facility. Indeed, in explaining why only 98 people were found in the Harrahs1 database, Davis states that it was "likely because the remaining 1,217 persons in the plan were not employed by CEOC [Caesars] or its affiliates as of or subsequent to the date the Harrahsl system went live." Davis Aff. ¶ 9. Davis further explains that she inferred that a "majority of these individuals were never employed by CEOC [Caesars] or its affiliates." *Id.* ¶ 11. The clear implication of these statements is that the Harrahs1 database includes employment information for all Caesars facilities—not simply the Queen of New Orleans. While it not wholly clear why Davis mentioned only the Queen of New Orleans—of all of the gaming facilities spun-off from Hilton to Park Place, which became part of Caesars—it appears most likely that she is providing an example of the facilities that were spun off where some of the retirees in question would have worked.

Plaintiff's protestations notwithstanding, the Court concludes that Defendants have provided an adequate explanation—supported by the Davis affidavit—why the search only revealed a limited number of people. Specifically, when Caesars acquired the obligation to support approximately one-third of the benefits to be paid by the Plan, it did so based on an assessment of the total obligations that were associated with any Caesars facilities *prior* to the acquisition by Caesars (then known as Park Place). In other words, this obligation includes former Hilton employees that retired *prior* to the spin-off of Hilton gaming facilities to the entity then known as Park Place (later known as Caesars) in 1998. Davis explicitly explains that the Harrahs1 database would only have information on people employed by Caesars and only on those employees who were employed after the Harrahs1 database was implemented. Davis Aff. ¶¶ 9, 11. Caesars

assumed responsibility for all current and former employees of the facilities spun off from Hilton to Park Place, but Caesars only maintained information on those that were actually employed by Caesars and only employed after the Harrahs1 database was created. (Caesars did not pay the employees directly. Davis Aff. ¶ 7.) This fact explains why, even though Caesars assumed responsibility for approximately 1/3 of the costs of the Plan, it only had access to contact information for a relatively small number of the class members in this case.

Plaintiff emphasizes the number of class members in states where Caesars maintains gaming facilities and suggest that, therefore, many of those people must have been Caesars employees. But Plaintiff's claim amounts to pure speculation. Plaintiff does not account for the Hilton non-gaming facilities that exist in those states, which Defendants emphasize. And, once again, Plaintiff does not account for the fact that some of those employees could be retirees—who retired from the facilities that became Caesars facilities before those operations were transferred to Caesars. Accordingly, the Court concludes that Defendants have adequately explained the number of addresses that resulted from the Caesars search and that they have satisfied the requirements of the Court's prior orders regarding Caesars.

### 3. Address Location

Having reviewed all of the parties' filings, the Court concludes that Defendants are adequately complying with the address location process ordered by the Court for the class members for whom addresses have not yet to be located.

Plaintiffs have raised a concern that the Defendants are improperly only sending letters—rather than benefits packages—to individuals claimed to be beneficiaries of deceased Plan participants. *See* Pl.'s Notice, ECF No. 426. The Court concludes that Defendants actions comply with this Court's prior orders in light of the fact that the recipients in question are not themselves *Plan participants*, but rather putative *beneficiaries* of Plan participants. *See* Def.'s Response, ECF No. 428, at 3-4. This fundamentally different status warrants different treatment, and Defendants' procedure for communicating with those people complies with this Court's prior orders. *See* Order, dated February 4, 2015, ECF No. 399, at 2 ("IT IS FURTHER ORDERED that, if PBI or Defendants have confirmed a *class member's address*, Defendants shall send the *increased benefits notice and retirement forms* to the class member in the same mailing.") (emphasis added).

Plaintiff have also raised concern that Defendants' are ignoring spousal beneficiaries when they should be addressing all beneficiaries, whether or not they are spouses. *See* Pl.'s Notice, ECF No. 419, at 3-6. Defendants explain that the language on which Plaintiff relies does not indicate that spousal beneficiaries are wrongly being omitted from efforts to contact beneficiaries. *See* Defs.' Response, ECF No. 425, at 6. The Court

is not convinced that Plaintiffs have identified any gap in coverage or any deficiency in Defendants' actions in implementing the Court's remedial orders.

The Court has reviewed all of the other materials that the parties have submitted regarding the ongoing address location efforts, including the certifications and declarations submitted by Defendants in support of their position, and the Court concludes that Defendants have shown that they are adequately complying with the address location process ordered by the Court for the class members for whom addresses had not yet been located—including the requirements set out in the Court's June 4, 2015, Memorandum Opinion and Order. Because Defendants have made an adequate showing to that effect, there is no reason for the Court to retain its limited jurisdiction over locations of class members.

In Defendant's November 2, 2015, Status Report, ECF No. 429, Defendants request clarification or modification regarding the ongoing search requirement ordered by the Court in its June 4, 2015. Specifically, in the Court's Order incorporated the following requirement as stated in the Court's Memorandum Opinion dated that day:

> If, after Aon Hewitt sends a Last Known Address letter to all unconfirmed addresses identified by PBI or Plaintiff's Counsel, no response is received or an address is returned as undeliverable, Aon Hewitt shall engage PBI no less than every two months to run a search for potential addresses for the class members with unconfirmed addresses.

Memorandum Opinion, ECF No. 414, dated June 4, 2015, at 9. Defendant requests clarification regarding whether the Court had intended that the bimonthly search requirements were to extend beyond the termination of this Court's jurisdiction. Defendant also requests that, even if the search requirement were intended to extend beyond the termination of the Court's supervisory jurisdiction, the Court should now modify that requirement. By its own terms, the requirement did not specify an end-date— nor did it specify that it was required in perpetuity. The Court need not examine the intent behind that Order because the Court now finds it proper to reduce the frequency of those searches and ultimately to terminate them as specified below. The Court finds that Defendants have adequately complied with the search requirements—notwithstanding certain logistical challenges inherent in identifying Plan members and their beneficiaries. Given the cost of the search and the fact that there are *necessarily* diminishing returns to a continued search because there is a fixed pool of members and beneficiaries. It also may unfortunately be impossible to identify functioning addresses for some of them. Therefore, the Court concludes that it is proper to reduce the frequency of these specific searches and to eliminate them as specified here.

The Court adopts the proposal suggested by Defendants for tapering the searches as modified here. The Court notes that, while Plaintiffs have identified what they claim are flaws with the search process thus far, Plaintiffs have not proposed a timeline for such

searches—other than continuing those search until all members and beneficiaries are found, which may effectively mean continuing the search in perpetuity. Now that almost three years have elapsed since the Court's remedial order took full effect, including the associated search requirements, the Court modifies the schedule for searches as follows:

- Defendants shall continue to engage PBI to conduct searches every two months until June 2016, which is one year after the Court entered the Order requiring such searches.

- Defendants shall engage PBI for an additional search six months after the June 2016 search, which will begin in December 2016.

- Defendants shall engage PBI for one final search in December 2017, to ensure that no address changes have occurred that would allow PBI to identify Plan members or their beneficiaries by that time.

After Defendants engage PBI for the December 2017 search, the obligation to conduct the searches pursuant to the Court's June 4, 2015, Memorandum Opinion and Order will cease—almost *five years* after the search requirements pursuant to the Court's remedial orders went into full effect. Perhaps needless to say, the termination of this specific search requirement does not modify Defendants' obligations to class members or beneficiaries that have already been identified or who will be identified in the future.

**4. Other Issues**

Plaintiff has raised several other issues over the course of the numerous filings submitted over the past year. None require an in-depth discussion.

In Plaintiff's August 12, 2015, [419] Notice, Plaintiff raised issues regarding the denial of vesting claims submitted through the established claims process. The Court will not address the merits of these arguments because it is outside of the scope of the narrow jurisdiction retained by the Court in its June 4, 2015, Order resolving Plaintiff's Motion for Reconsideration. *See* Order, dated June 4, 2015 ("[T]he jurisdiction over the implementation of the judgment in this matter shall continue only for the purpose of resolving the discrete issues relating to Defendants' address location process and obtaining addresses from Caesars Entertainment."). Such issues are properly addressed through Hilton's internal appeals process.

Finally, Plaintiff suggests that Defendants have failed to respond to inquiries or to provide certain information, and both parties have provided copies of a number of e-mail messages sent among counsel for the parties and others. *See, e.g.*, Plaintiff's Notice, ECF No. 419, at 6-7; Defs.' Response, ECF No. 425, at 7, Lacy Decl. Having examined all of those filings and the exchanges they contain, it is enough to say that Plaintiff has not raised any issues that are within the scope of this Court's continuing jurisdiction that require resolution. Moreover, none of the issues mentioned preclude the Court from

determining that the time to bring the Court's jurisdiction over this case to a close has finally arrived.

**5. Summary of Rulings**

Through the Order issued today accompanying this Memorandum Opinion, the Court issues the following Orders:

Insofar as Plaintiff's [401] Motion for Reconsideration was held in abeyance on June 4, 2015, that motion is now DENIED.

The requirement that Defendants engage PBI at least once every two months to conduct a search for potential addresses, pursuant to the Court's June 4, 2015, Order, is now modified as follows:

- the bi-monthly searches shall continue through June 2016;

- Defendants shall engage PBI for an additional search in December 2016;

- and Defendants shall engage PBI for a final search in December 2017.

*Beyond these enumerated searches, no additional searches pursuant to ¶ 9 of the Court's June 4, 2015, Memorandum Opinion are required.* The termination of this specific search requirement does not modify Defendants' obligations to class members or beneficiaries that have already been identified or who will be identified by other means in the future.

All requirements that the parties regularly report on the implementation of the judgment in this case, including Defendants' monthly reporting on the mailing of union service notice and claim forms, are TERMINATED.

The Court's jurisdiction over this matter has now concluded, as of the Order issued today, and this action is DISMISSED in its entirety.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge